## AFFIDAVIT

**In the District of Columbia**

I, Susana Ibarra, hereby declare the following as true and correct statements of fact and I give this affidavit in support of Mr. Alberto Montoya's Motion to Vacate a Default Judgment entered on December 20, 2005 in case number 1:05-cv-01364:

I am a US Citizen, and I live at 4436 Venable Ave., Alexandria, Va. 22304.
I am currently unemployed as of December 2005, however, prior to being unemployed I worked for Nationwide Ins. for one year as a bilingual receptionist.
From 1994 through 1998 I worked for a criminal and immigration law office as a receptionist and legal secretary.
I am not involved or associated with the monies involved in the Montoya case, however, I know Alberto Montoya and have known him for 10 years.
I first met Alberto Montoya in approximately 1995 as I was a customer of his business. Over the years we became good friends.
To the best of my knowledge, Mr. Montoya owns his own business named Concord Express which is a courier service. All the years that I have known Mr. Montoya, he has owned and run the business. His office is in Arlington, Va.

The following represents my understanding of events that occurred during 2005 regarding monies belonging to my friend Alberto Montoya:

March-April 2005

In or about March-April 2005 I met with Mr. Montoya in El Salvador. Upon seeing Mr. Montoya, I asked him why he was in the Country as it was a busy period of time and I knew he had a business in America he should be attending to.
Mr. Montoya explained to me that he was sick and was not traveling at the moment.
I immediately asked Mr. Montoya about his business and how he was handling his business from El Salvador. Mr. Montoya explained to me that he had someone handling the business for him in Virginia.

Early April 2005

In the beginning of April 2005, Mr. Montoya came to my home in Alexandria, Va. With him he brought a package of documents and asked me to read them and explain what the documents meant. Upon review of these documents, I explained that he had to sign the documents he was given from the Government and that he needed to prove the money seized was legitimate money.
Mr. Montoya told me that his money was legitimate and that he had records and receipts to prove this. I recommended that we get statements from these people and provide these including the receipts he had to the government to prove to them that the money was legitimate.



1

I then explained to him that the amount of money seized by the government was $101,251 dollars. I asked Mr. Montoya all the money was his? Mr. Montoya explained to me that the carrier of the money was carrying money on behalf of three companies: Concord Express, Hernandez Express, and Umana Express. He could only prove his share of the money was legitimate which was approximately $34,600.

I told Mr. Montoya I would work or help him complete the documents.

Mr. Montoya asked me to type a letter that he could take to Atlanta because his money was being held in Atlanta and he needed to explain to the US Customs & Boarder protection that his money was legitimate. Also, Mr. Montoya needed my assistance because he does not speak fluent English. Thus, on April 11, 2005 I typed a letter for him explaining that Mr. Montoya had proof and receipt of all the money he gave to Mr. Flores was business money he received from his clients that needed to be disbursed to all their loved ones in El Salvador.

Late April 2005

I spoke with Mr. Montoya via telephone and he explained to me that he met with people in Atlanta and that he did not get his money back. He explained that he was told to "wait" and they could not make a decision what to do with the money yet because they still needed to get proof that the funds were legitimate.

July 2005

During July 2005 Mr. Montoya called me and explained that he had received a second package that he wanted me to read and explain to him.

On approximately July 10, 2005 Mr. Montoya came to my residence in Alexandria, Va. and brought me the second package he received from the United States.

Upon review of the package I explained to him that he needed to get statements and details from individuals indicating where the money had come from, where it was going, and the like.

Mr. Montoya again told me that he had receipts from individuals that had given him the money but that he didn't have written statements from these individuals.

I explained to him that I could help draft a statement for him that everyone could sign and he could leave the statement in his office which people could come in and sign. I said that I thought this would be enough to comply with the requests in the package.

August 2005

In late August, Mr. Montoya came to my home and with him he brought receipts and signed statements from all of his customers who had given him money which had been seized by the US Govt.

Upon receiving this evidence, we put together a package for the government that included receipts, statements, and a letter from Mr. Montoya (which I had typed) that identified what was in the package and that it was from Mr. Montoya.

When Mr. Montoya left my home I understood he was going to mail the package I helped him prepare.

October 2005

From August 2005 through October 2005 I routinely asked Mr. Montoya if he heard from the government regarding the package we put together. Mr. Montoya always replied in the negative.
Finally, in late October, I received a fax from Mr. Montoya's American employee Luciano Bonilla. The letter was to Mr. Montoya from the US Government. The letter was dated October 27, 2005. I read the letter and understood it to mean that everything was looking good and that Mr. Montoya was going to get his money back.
On the day I got the fax from Mr. Bonilla, that evening Mr. Montoya called me and asked me if I got the fax from Mr. Bonilla and if so if I could explain to him my understanding of the letter. I told him that he was going to get his money back but that he had to wait until January 5, 2006.
Mr. Montoya was pleased with my report and agreed to wait until the date of the letter in reliance upon the advice I had given him. At this point, and all the way up through January 6, 2006, neither nor I had consulted with an attorney about this matter.

November 2005 - December 2005

From November 2005 through December 2005 I received no phone calls from Mr. Montoya regarding his money issue.

January 2006

On January 1, 2006 I received a phone call from Mr. Montoya telling me "we got envelopes" and "we got papers." I told Mr. Montoya to bring all the papers he got with him to my house.

On January 4, 2006 Mr. Montoya came to my house and brought letters he received from the government during the month of December.
Mr. Montoya asked me to read the documents and explain them to him.
Upon review of the documents "it all looked like Chinese and was very confusing." I told Mr. Montoya that "I cannot explain these documents because they are confusing" but I knew the documents did not look like he was going to get his money back. I told Mr. Montoya I would call Michael Humphreys the United States Attorney and find out what all the documents were about.
I called Mr. Humphreys at least five times on this day and left several messages on his voice mail to return my call. I provided Mr. Humphreys the case number, my name, that we were very confused, and wanted to know what was going on. Mr. Humphreys never returned my call.
I then went onto the internet and began to look for an attorney in Washington, DC for help.

On January 5, 2006 I called Mr. Humphreys again and left several messages, Mr. Humphreys again did not return my calls.

3

On 1/6/06 at 9:00am both Mr. Montoya and I drove to 555 4th St., the United States Attorney's Office and requested to see Mr. Humphreys. We were turned away for not having an appointment. At 10:00am we went to the law offices of Martin F. McMahon to see if he could help us get Mr. Montoya's money back.


*Susana Ibarra*                                          1-6-06
Susana Ibarra                                            Dated

Alexandria, VA.



Subscribed and sworn to before me, this 6th day of December, 2006.

*Susana Ibarra*
Susana Ibarra
4436 Venable Ave, Alexandria, Va. 22304

Pat Martin *Patricia B Martin*

NOTARY PUBLIC

My commission expires: Patricia B. Martin
Notary Public, District of Columbia
My Commission Expires 3-31-2009

4