**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>555 Fourth St., N.W.<br>Washington, D.C. 20530<br><br>    Plaintiff(s),<br><br>    v.<br><br>SEVENTY-NINE THOUSAND THREE<br>HUNDRED TWENTY-ONE DOLLARS<br>($79,321.00) IN UNITED STATES<br>CURRENCY ),<br><br>    Defendant(s) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No:    1:05-cv-01364<br>)  Judge:       Reggie B. Walton<br>)  Date Filed:  July 8, 2005<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO VACATE**
**JUDGMENT BY DEFAULT**

Defendant herein, Alberto Montoya ("Mr. Montoya") by and through undersigned counsel and for good cause shown, hereby replies to the United States Attorney for the District of Columbia's (hereinafter "Government") opposition to Defendant's motion to vacate the judgment by default entered by this Court on December 20, 2005.

As detailed in Defendant's memorandum in support of his motion, Mr. Montoya was essentially misled by the Government to think that he had satisfied their requirements as to establishing the source and legitimacy of the funds which they seized on or about March 21, 2005. Given Mr. Montoya's very limited English skills and the frequency of his overseas travel, he never knew about the impending default and as such, he should be afforded relief under Federal Rule of Civil Procedure (hereinafter "FRCP") 60(b).

In the Government's highly technical opposition to Mr. Montoya's motion, numerous facts were not addressed which directly contradict the Government's two opposing points – standing and excusable neglect. Specific omitted facts include: (1) Mr. Montoya's visit to Atlanta immediately following the seizure of said funds; (2) an evidence package Mr. Montoya mailed to the Government in or about August 2005 verifying the legitimacy and untainted character of said funds; and (3) Mr. Montoya's English language limitation coupled with his overseas travel.[1] In addition to failing to address these salient facts, the Government does not rebut Defendant's relevant and factually similar case law and instead cites to cases that stand for propositions unrelated to this matter and/or Mr. Montoya's contentions.

Considering the foregoing as well as Defendant's submitted exhibits, it is very appropriate to request this Court vacate the judgment by default pursuant to FRCP 60(b) and enter the proposed order Defendant submitted with his motion to vacate.[2]

**I.  THE GOVERNMENT FAILS TO ADDRESS FACTS THAT CONTRADICT THEIR "STANDING" AND "EXCUSABLE NEGLECT" ARGUMENTS; AS SUCH, MR. MONTOYA'S MOTION TO VACATE JUDGMENT BY DEFAULT SHOULD BE GRANTED.**

**A.    Mr. Montoya Flew Into The Atlanta International Airport on Two Separate Occasions and Claimed a Possessory Interest in the Monies Seized.**

The Government's technical opposition provides that Mr. Montoya does not have statutory or Article III standing to claim any interest in the monies seized. Defendant strongly disagrees with this contention. The Government refers to United States v. $8,221,877.16 in U.S. Currency, for an explanation on the difference between statutory and Article III standing. 330

---

[1] Since it is unclear whether the Government even reviewed the receipts and declarations Mr. Montoya provided in or about August 2005, Defendant resubmits copies of receipts evidencing the validity and "untainted" character of the seized funds that he claims he has a one-third possessory interest in. See attached Exhibit A.

[2] In addition and as FRCP 1 recites, the federal rules shall be construed "to secure the just … determination of the reaction". Fed. R. Civ. P. 1.

F.3d 141 (3d Cir. 2003).  Per $8.2M in U.S. Currency, "Article III standing requires the claimant to show an interest in the property sufficient to create a 'case or controversy,' while statutory standing requires claimants to comply with certain procedures."  Id. at 150 n. 9.  The "certain procedures" required by the Supplemental Rules for Certain Admiralty and Maritime Claims, Rule C(6), include filing a claim within 10 days after process has been executed, *or within such additional time as may be allowed by the court*, and shall serve an answer within 20 days after the filing of the claim.  Supp. R. C(6) (2001) (emphasis added).  Defendant submits, under Article III, Mr. Montoya has made more than a colorable claim over the seized funds vis-à-vis his two trips to Atlanta and compliance with the "claim" requirements of the Fines, Penalties & Forfeitures Office (hereinafter "Forfeiture Office").  In addition, Defendant submits that this Court has discretion to allow Mr. Montoya additional time to file his answer outside the strict and technical first blush guidelines of Rule C(6).[3]

     As evidenced by Mr. Montoya's affidavit (Attached as Def's Exhibit A in our previously filed memorandum) on April 8, 2005 (seventeen days post seizure of funds) Mr. Montoya flew into the Atlanta International Airport to speak with someone about monies confiscated from his colleague Mr. Santos and in which he had a one-third possessory interest.  On this same day, Mr. Montoya spoke with Paula L. Primm from the Forfeiture Office.  Ms. Primm gave Mr. Montoya "papers to sign" (i.e. claim form) that upon completion would establish Mr. Montoya's possessory interest in the monies seized.  As previously mentioned, Mr. Montoya has a significant language impediment and had to take the "papers" Ms. Primm provided him with to his friend and colleague Ms. Susana Ibarra for proper interpretation.  With the assistance of Ms. Ibarra, Mr. Montoya submitted the completed paperwork Ms. Primm gave him to the Forfeiture

---

[3] Finally, see infra. Pt I(D) (discussing Mr. Montoya's right to the immediate release of funds under 18 U.S.C. § 983(f)).

Office on April 11, 2005. In addition, Mr. Montoya provided Ms. Primm with a typewritten letter explaining his legitimate and possessory interest in the monies seized.[4] Approximately four months later, Mr. Montoya again made a claim over the funds seized when he provided the Government with a package containing 90 signed declarations and numerous receipts from his customers evidencing the validity and untainted character of the seized monies. See attached Exhibit A; see infra. pt. I (B).

Based upon the foregoing, it is clear that the Government's highly technical standing argument fails since it avoids addressing the salient facts herein. It is also clear that this Court is afforded ample discretion to effectuate FRCP 60(b) relief under the circumstances at bar.

**B.    Mr. Montoya Specifically Provided the Government With a Package Containing Receipts from Customers Evidencing the Monies Seized Were Not Tainted.**

In further rebuttal of the Government's "standing" argument, Mr. Montoya states in his Affidavit that he received a "package" from the government in or about July 2005. In said "package" (later identified by defense counsel as the Government's complaint) Mr. Montoya understood that he needed to provide the Government with evidence that the monies seized were legitimate and untainted. Accordingly, Mr. Montoya solicited each of his 140 known customers for declarations as to the validity of their business dealings with him and obtained receipts from his customers evidencing the legitimacy and untainted character of the monies seized.[5] On or about August 26, 2005, Mr. Montoya mailed 90 signed declarations and numerous receipts to the address and attorney listed on the Government's complaint.

---

[4] See attached Exhibit B.
[5] See attached Exhibit A.

In their opposition, the Government makes no mention of the three aforementioned attempts Mr. Montoya made to declare his interest in the monies seized.[6] As such, the Government's highly technical standing argument again fails in not addressing the salient facts including but not limited to Mr. Montoya's good faith attempts to declare his interest in the monies seized.

C. **Mr. Montoya Has a Significant Language Impediment that when Coupled with His Frequent Travel outside the United States, Inhibited his Ability to Respond to the Government's Complaint and as such, Relief Afforded by Rule 60(b) is Warranted.**

Mr. Montoya does not speak English. In Mr. Montoya's good faith attempt to understand any and all documents provided to him by the Government, Mr. Montoya solicited the advice and interpretation of his friend and colleague with a legal background – Ms. Ibarra. When this Court considers Mr. Montoya's lack of language skills and the frequency of his overseas travel, Defendant submits that any one of the recognizable grounds for relief from a final judgment afforded by FRCP 60(b)(1) apply in this case.[7] Specifically, Mr. Montoya's neglect in responding to the Government's complaint was "excusable" pursuant to FRCP 60(b).

In their opposition, the Government argues that Mr. Montoya's neglect in answering their complaint was "not excusable" despite the confusing and misleading letter mailed to him on October 27, 2005 from the Forfeiture Office. The Government cites <u>Pioneer Investment Services Co. v. Brunswick Associates</u> and <u>Cash v. Illinois Division of Mental Health</u>, in support of their argument as these cases hold that ignorance of rules and/or legal blunders are not excusable. 507 U.S. 380, 392 (1993); 209 F.3d 695, 697-98 (7th Cir. 2000). Defendant Montoya submits,

---

[6] The three specific attempts are: (1) his first trip to Atlanta Int'l Airport and initial conversation with Ms. Primm; (2) second trip to Atlanta Int'l Airport, second conversation with Ms. Primm, turned over completed paperwork; and (3) specific mailing of declarations and receipts to Government evidencing the legitimacy and untainted character of the seized monies and Mr. Montoya's possessory interest in them.

however, that he never argued "ignorance of rules" or "legal blunders" as excuses for his neglect in timely answering the Government's complaint. To the contrary, Defendant Montoya cites relevant and factually similar case law that suggests when a defendant is misled and/or confused and through no fault of his own fails to act, such that a default judgment is entered against him, relief can be afforded under FRCP 60(b).[8]

When the Court takes into consideration: (1) Mr. Montoya's limited understanding of the English language; (2) his ability to furnish business records to the Forfeiture Office demonstrating the origin of the monies; and (3) the confusing and misleading language contained in the Forfeitures Office's October 27, 2005 letter, it is clear that the excusable neglect ground et al, applies and accordingly, this Court can and should provide relief to Mr. Montoya pursuant to FRCP 60(b).

### D. Mr. Montoya Has a Possessory Interest in the Aforementioned Funds and Pursuant to Title 18 § 983(f), the Government Should Immediately Release Said Funds.

The Government argues that the "innocent owner" defense provided under 18 U.S.C. § 983(d) is not applicable to Mr. Montoya as they allege he conceded any ownership interest in the monies seized through his Affidavit. First, it is important to recognize that Defendant Montoya never raised the "innocent owner" defense.[9] Mr. Montoya has repeatedly argued for the release of the seized funds as he has a colorable possessory interest in one-third of said monies. Thus, under 18 U.S.C. § 983(f)(1)(A) Mr. Montoya is entitled to the immediate release of the seized

---

[7] It should be noted that the Government merely rebuts Defendant Montoya's 60(b) argument under the theory of "excusable neglect," however, in addition to this available ground for relief, other grounds for relief are applicable and include "mistake," "surprise," and "inadvertence." See Fed. R. Civ. P. 60(b).

[8] See United States v. $48,595, 705 F.2d 909, 912-13 (7th Cir. 1983); Marshall v. Monrow & Sons, Inc., 615 F.2d 1156, 1161 (6th Cir. 1980) (holding that when a defendant is misled by certain procedural requirements that were drafted in a confusing manner relief may be granted under 60(b)).

[9] Alternatively, even if Defendant argued the "innocent owner" defense as provided by 18 U.S.C. § 983(d), subsection (2)(A)(i)-(ii) would apply as Mr. Montoya was a bailee of the monies and had a colorable legitimate interest in the seized funds.

6

monies. Mr. Montoya has further argued that the Government's continued possession of said funds, will cause him substantial hardship. As previously mentioned in Defendant's analysis of the Pioneer factors, Mr. Montoya will suffer great prejudice if the default judgment entered on December 20, 2005 is not vacated. As noted above, the monies seized on May 21, 2005 were not Mr. Montoya's monies per se. Rather, Mr. Montoya – through his business – provides a couriering service and acts as a bailee for his customers in their efforts to provide financial support for their families in El Salvador.[10] Thus, under 18 U.S.C. § 983(f)(1)(C), Mr. Montoya is entitled to the immediate release of the seized monies.

Finally, under § 983(f)(1)(E), Mr. Montoya argues he is entitled to the immediate release of said funds because none of the conditions set forth in paragraph (8) of § 983(f) apply.[11]

At all relevant times, Mr. Montoya acted in good faith up to and including his efforts to provide the government with ample evidence of the legitimacy of origin of the seized monies.

---

[10] Defendant asks this Court to take judicial notice of the fact that 15% of El Salvador's GDP comes from monies couriered from the U.S. to El Salvador each year. See previously submitted Exhibit D.

[11] Paragraph (8) discusses whether the seized funds are deemed contraband, will be used as evidence in violation of the law, will be used for illegal activities, and/or will likely be used to commit additional criminal acts if returned to the claimant. 18 U.S.C. § 983 (f)(8).

## CONCLUSION

WHEREFORE, Defendant submits this reply memorandum in further support of its motion to vacate the default judgment entered on December 20, 2005. Defendant respectfully repeats his request that this Court enter the proposed order submitted by Defendant on January 12, 2006 and set a date for Mr. Montoya to answer the Government's complaint.

Respectfully Submitted on this 27th day of January, 2006,

**MARTIN McMAHON & ASSOCIATES**

BY      /s/
Martin F. McMahon, Esq.
D.C. Bar No.: #196642
1150 Connecticut Ave. N.W., Suite 900
Washington, DC  20036
(202) 862-4343
(202) 828-4130
*Attorney for Defendant Montoya*

Lisa D. Angelo, Esq.
D.C. Bar No.: #491206
1150 Connecticut Ave., N.W. Suite 900
Washington, DC  20036
(202) 862-4356

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 27th day of January, 2006, a copy of the foregoing was sent via first class mailed, postage prepaid, to Judith Kidwell, Esq., U.S. Attorney's Office, Asset Forfeiture Unit, Criminal Division, 555 Fourth St., N.W., Room 4822, Washington, DC 20530.

/s/
Martin F. McMahon, Esq.