**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>555 Fourth St., N.W.            )<br>Washington, D.C. 20530         )<br>                                             )<br>          Plaintiff(s),              )<br>                                             )<br>     v.                                  )<br>                                             )<br>SEVENTY-NINE THOUSAND THREE   )<br>HUNDRED TWENTY-ONE DOLLARS    )<br>($79,321.00) IN UNITED STATES          )<br>CURRENCY ),                                   )<br>                                             )<br>          Defendant(s)              )  | Case No:     1:05-cv-01364<br>Judge:          Reggie B. Walton<br>Date Filed:   July 8, 2005 |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S RENEWED MOTION TO VACATE JUDGMENT BY DEFAULT**

As this Court is aware pursuant to Mr. Alberto Montoya's (hereinafter referred to as the "Claimant") initial motion to vacate, this case concerns a forfeiture action by the Government against monies seized on May 20, 2005 at the Hartsfield International Airport in Atlanta, GA and the Claimant's 1/3 interest in the monies seized.[1]  This Court entered a default judgment concerning the seized monies on December 20, 2005 when no claimant filed an answer to the Government's complaint dated June 2, 2005.

On January 12, 2006 the Claimant filed a Rule 60(b) motion to vacate the underlying default.  This Court noted in its May 22, 2006 Order and opinion that the Claimant's Rule 60(b)

---

[1] Given the Court's recent review of the very detailed facts and evidence provided in Mr. Montoya's initial motion and related papers to vacate the underlying default, this memorandum serves only to answer the Court's threshold question as noted in its Order of May 22, 2006 and requests that his previous motion and evidence submitted thereto be incorporated by reference to his renewed motion to vacate.

motion was proper due to "mistake" and "excusable neglect" but that a three part test must still be applied to determine whether to set-aside the default. (J. Walton, Order of May 22, 2006 at 2.) Under this "set-aside" test, the Court found that the Claimant satisfied two of the three parts of this test, namely, (1) that the Claimant's failure to respond to the government's complaint was not willful; and, (2) that the government will not be prejudiced if the default was set aside. Id. The Court was not satisfied, however, that the third part of the test, regarding the meritorious nature of the Claimant's defense, was met. Thus, the Claimant's motion to vacate was denied without prejudice and the Court graciously provided him ten days to file a renewed 60(b) motion detailing with legal specificity how his alleged defense is meritorious, thereby satisfying all three prongs of the set-aside test.

Accordingly, the Claimant submits this renewed motion in response to this Court's Order of May 22, 2006 and asserts that all three parts of the set-aside test are met.

**I.   THE CLAIMANT'S DEFENSE IS MERITORIOUS BECAUSE HE QUALIFIES AS AN "INNOCENT OWNER" UNDER 18 U.S.C. § 983(d).[2]**

On May 20, 2005, due to extreme illness which kept the Claimant bedridden in El Salvador for approximately two months, the Claimant hired an agent to transport funds that had been entrusted to the Claimant. See Claimant's Aff. (Ex. A). While said agent was en route from the United States to El Salvador on May 20, 2005, the agent failed to declare the entire amount of the funds that he was transporting. As a result, these funds were seized in Atlanta, Ga. at the Hartsfield International Airport.

Under 18 U.S.C. § 983(d)(1), an innocent owner has the burden to show by a preponderance of the evidence that he meets the definitional requirements of an innocent owner

---

[2] The Claimant's discussion of this defense should not be construed as an admission that the seizure and forfeiture of the funds was proper, since the Claimant intends to challenge the government's reliance on 31 U.S.C. §§ 5317, 5324, and 5332 as grounds for the forfeiture.

2

under subsection (d)(2). Because the Claimant is a party with a property interest that was in existence at the time his agent failed to declare the correct amount of funds at the Hartsfield International Airport and because he was unaware of his agent's improper activity, the Claimant can show by a preponderance of the evidence that he is an innocent owner.

An innocent owner is defined in § 983(d)(2)(A)(i) as a claimant who had a property interest in existence at the time of the illegal conduct giving rise to the forfeiture, and who "did not know of the conduct giving rise to the forfeiture." The Claimant falls under this definition because he did not know of the conduct giving rise to the forfeiture, nor did he intend for the agent to act as he did. As indicated by the Claimant's dutiful compliance with the reporting requirement over the course of the past ten years, he clearly intended that the agent comply with the reporting requirement.

The Claimant also qualifies as an "owner" under 18 U.S.C. § 983(d)(6), which defines an owner as "a person with an ownership interest in the specific property sought to be forfeited." The statute does not narrowly define "owner" as only including persons with a proprietary interest in the property.[3] The Claimant has a 1/3 ownership interest in the seized funds because he was entrusted by numerous parties to transport said funds from the United States to El Salvador. Thus, the Claimant's ownership interest in the specific property sought to be forfeited is at least that of a bailee.[4] Although bailees are generally not considered an owner within the

---

[3] 18 U.S.C. § 983(d)(6)(A): "an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment." (The language "including" suggests that the list is not meant to be exclusive and the inclusion of "leasehold" demonstrates that proprietary interest is not a requirement.)

[4] A bailee is defined as: "A person who receives personal property from another as a bailment," and a bailment is defined as: "A delivery of personal property by one person (the *bailor*) to another (the *bailee*) who holds the property for a certain purpose under an express or implied-in-fact contract. Unlike a sale or gift of personal property, a bailment involves a change in possession but not in title." BLACK'S LAW DICTIONARY (8th ed. 2004)

definition in 18 U.S.C. § 983(d)(6), the Claimant falls within the exception to this general rule under 18 U.S.C. § 983(d)(6)(B)(ii) because the bailors have been identified (see Ex. A submitted previously in Claimant's Reply filed January 27, 2005) and the Claimant has a colorable legitimate interest in the property because he will be personally liable for repayment of the seized funds if they are not returned to him.  See Mot. to Expedite filed April 27, 2006 (evidencing the Claimant's recently received threats by former clients seeking the return of their entrusted funds).  This legitimate interest also establishes the Claimant's Article III standing to challenge the seizure.[5]  Because the Claimant can establish that he is an innocent owner, and consequently has standing to challenge the forfeiture, his ability to successfully assert this defense meets the final prong of the set-aside test.

In short, this Court should vacate the final judgment entered against the Claimant pursuant to Fed. R. Civ. P. 60(b) since all prongs of the three part set-aside test are satisfied.

**II.     THIS COURT SHOULD VACATE THE UNDERLYING DEFAULT GIVEN THAT ALL THREE PARTS OF THE SET-ASIDE TEST ARE MET AND BECAUSE POLICY CONCERNS SUPPORT ALLOWING THE CLAIMANT TO DEFEND AGAINST THIS FORFEITURE.**

Allowing the Claimant to defend against this forfeiture is in the interest of efficiency and the public policy underlying the statute.

Since the Claimant's challenge to the forfeiture action would also resolve disputes with regard to ninety-seven other parties' financial interests, the Court should allow him to proceed in

---

[5] "In a civil forfeiture case…all that needs to be shown is a facially colorable interest in the proceedings sufficient to satisfy the case-or-controversy requirement…It is widely held that a claimant has a facially colorable interest in the proceedings if the Claimant can prove his or her interest by showing actual possession, dominion, control, title or financial stake in the subject property." United States v. 74.05 Acres, Civil No: 3:03cv1953 (PCD), 2006 U.S. Dist. LEXIS 17060, *8-9 (D. Conn. 2006) (internal citations omitted); see also United States v. $ 746,198 in United States Currency, 299 F. Supp. 2d 923, 931 (D. Iowa 2004) (holding that a bailee of property possesses Article III standing to contest a civil forfeiture).

4

the interest of efficiency. By succeeding on his challenge, the Claimant will be able to deliver the funds to families in El Salvador who have been waiting for resolution of this matter since the funds were seized in March of 2005. Furthermore, this would relieve these families of the burden of bringing individual claims against the government, and it would subsequently relieve the Court's docket by resolving the matter in a single proceeding.

The public policy underlying the statute which the Government relies on as a basis for the forfeiture also supports a resolution of this matter in favor of the Claimant. This statute seeks primarily to punish illegal activities, such as money laundering and drug dealing, by causing the persons involved in those activities to forfeit the proceeds or instruments of these illegal activities.[6] Consistent with this purpose, the provisions relied on by the government[7] focus on acts committed with the purpose of evading the reporting requirement. Nothing in these provisions suggests that Congress intended for innocent persons to forfeit funds due to the mistakes or wrongdoing of others. With the enactment of the Civil Asset Forfeiture Reform Act[8] Congress sought to protect the interests of innocent persons by adding the innocent owner defense,[9] which seeks to prevent the forfeiture of funds owned by persons who are innocent of any wrongdoing. In light of this purpose, a finding for the Claimant would be in line with Congress' intention in passing these forfeiture provisions.

---

[6] See United States v. United States Currency in Amount of One Hundred Forty-Five Thousand, One Hundred Thirty-Nine Dollars, 803 F. Supp. 592, 596 (D.N.Y. 1992) ("one legitimate civil purpose of forfeiture statutes is to 'remove instrumentalities of crime from general circulation…' The rationale is the same one underpinning forfeitures generally: where money or property is used in the commission of a crime or to facilitate a crime, it is considered the culpable actor.")

[7] 31 U.S.C. §§ 5317, 5324, 5332

[8] 106 P.L. 185; 114 Stat. 202 (codified in scattered sections of Title 18 and Title 28) ("To provide a more just and uniform procedure for Federal civil forfeitures, and for other purposes.")

[9] 18 U.S.C. § 983(d)

## CONCLUSION

WHEREFORE, Defendant moves this honorable Court to vacate the default judgment entered on December 20, 2005.

Dated: this 6th day of June, 2006.

        Respectfully Submitted,

        **MARTIN McMAHON & ASSOCIATES**

    BY      /s/
        Martin F. McMahon, Esq.
        D.C. Bar No.: 196642
        Lisa D. Angelo, Esq.
        D.C. Bar No.: 491206
        1150 Connecticut Ave. N.W., Suite 900
        Washington, DC 20036
        (202) 862-4343

        *Attorneys for Defendant Montoya*

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 6th day of June, 2006, a copy of the foregoing was sent via electronic mail, to Judith Kidwell, Esq., U.S. Attorney's Office, Asset Forfeiture Unit, Criminal Division, 555 Fourth St., N.W., Room 4822, Washington, DC 20530.

        /s/
        Lisa D. Angelo, Esq.