UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>SEVENTY-NINE THOUSAND THREE )<br>HUNDRED TWENTY-ONE DOLLARS )<br>($79,321.00) IN UNITED STATES )<br>CURRENCY, )<br>)<br>Defendant. ) | Civil Action No.  05-01364 (RBW) |

**OPPOSITION TO RENEWED MOTION TO VACATE JUDGMENT BY DEFAULT**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Opposition to the Renewed Motion to Vacate Judgment By Default filed by Alberto Montoya (hereafter "Mr. Montoya").  For the reasons set forth herein, the United States requests that Mr. Montoya's motion be denied.

**I.     Procedural Background**

The defendant property was seized on March 21, 2005.[1]  After several administrative claims were filed for the defendant property, it was referred for judicial forfeiture.  On July 8, 2005, the United States filed its Verified Complaint for Forfeiture, *In Rem*. As recited in the Verified Complaint herein, the United States brought this civil action to forfeit $79,321.00 that a courier, Santos Efrain Flores (hereafter "Mr. Flores") had concealed and attempted to smuggle out of the United States on March 21, 2005, without declaring the monies.  The government sought forfeiture on the bases that Mr. Flores had violated 31 U.S.C. § 5316 and 31 U.S.C.

---

[1] Mr. Montoya's Renewed Motion to Vacate judgment states that this occurred in May 2005.  We assume the May date recited in Mr. Montoya's renewed motion is in error.

§§ 5332(a) and ©.[2] Copies of the government's Verified Complaint *In Rem* and Warrant for Arrest *In Rem* were sent by certified mail to all interested parties who had filed administrative claims, including Mario Umana, of Umana Express, who was served on August 6, 2005, Mr. Montoya who was served on August 11, 2005, and Santos Flores of Hernandez Express and his representative, Felix Ayala, who were served on August 17 and 18, 2005.

Having received no verified claims or answers, on November 21, 2005, the government filed an affidavit and entry for default. The Clerk of the Court entered the default on November 22, 2005. On December 20, 2005, the government filed its Motion for Default Judgment and a Decree of Forfeiture was entered on December 21, 2005.

On January 12, 2006, Mr. Montoya filed a motion to vacate judgment. On May 22, 2006, the Court denied Mr. Montoya's motion, without prejudice, for failing to establish that he was entitled to relief under Fed. R. Civ. P. 60(b). However, the Court gave Mr. Montoya leave to file a renewed motion and ordered that such motion "specifically address all of the prongs of the applicable legal standard." On June 6, 2006, Mr. Montoya filed a Renewed Rule 60(b) Motion to Vacate Judgment By Default.[3]

---

[2] Our Verified Complaint was based, in part, on statements from Mr. Flores establishing that he knew he violated the Title 31 offenses. As discussed herein, if Mr. Montoya's motion is granted, the government will seek to amend its complaint to add an additional basis for forfeiture of the defendant property. Mr. Montoya appears to indicate that the defendant property was involved in his unlicensed money transmitting business' operations - a violation of 18 U.S.C. § 1960.

[3] Contrary to the Court's May 22, 2006 Order, in his renewed motion, Mr. Montoya has addressed only the issue of whether he has a meritorious claim. In a footnote contained in Mr. Montoya's Memorandum of Points and Authorities, Mr. Montoya requests that the Court consider his previous motion and evidence and incorporate such into his renewed motion. The government submits that Mr. Montoya's initial motion was denied and is not before the Court.

As alleged in the government's Verified Complaint *in Rem*, the defendant property was the subject of a Report of International Transportation of Currency or Monetary Instruments ("CMIR") that contained a material omission or misstatement of fact in violation of 31 U.S.C. § 5324(c)(2),[4] and was, therefore, subject to forfeiture pursuant to 31 U.S.C. § 5317(c)(2). Moreover, the defendant property was greater than $10,000 in value and was concealed in such a fashion as to evade detection while in transit from a place within the United States to a place outside of the United States, in order to evade the currency reporting requirements contained in 31 U.S.C. § 5332(a)(1). The defendant property was, therefore, subject to forfeiture pursuant to 31 U.S.C. § 5332©.[5]

The procedures for civil forfeiture pursuant to these statutes are those governing civil forfeiture of property involved in money laundering under 18 U.S.C. § 981(a)(1)(A). These procedures are found at 18 U.S.C. § 983.

---

[4] Section 5324(c)(2) of Title 31, United States Code, provides that "[N]o person shall, for the purpose of evading the reporting requirements of Section 5316 – file or cause or attempt to cause a person to file a report required under Section 5316 that contains a material omission or misstatement of fact." Section 5316 of Title 31, United States Code, provides that "a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee knowingly – transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time – from a place in the United States to or through a place outside of the United States. "Monetary instruments" include United States currency. 31 U.S.C. § 5312(a)(3).

[5] Whoever, with the intent to evade a currency reporting requirement under Section 5316, knowingly conceals more than $10,000 in currency or other monetary instruments on the person of such individual or in any conveyance, article of luggage, merchandise, or other container, and transports or transfers or attempts to transport or transfer such currency or monetary instruments from a place within the United States to a place outside of the United States, or from a place outside the United States to a place within the United States, shall be guilty of a currency smuggling offense and subject to punishment pursuant to subsection (b).

II.  **Factual Background**

Mr. Flores, a native and citizen of El Salvador, was traveling from Washington, D.C., to El Salvador, with a change of planes in Atlanta, Georgia. He had declared that he was carrying $21,910. Mr. Flores boarded a Delta flight at the Atlanta Airport destined for El Salvador with two carry-on bags. He had checked three oversized bags.

Based upon information received, Immigration and Customs Enforcement ("ICE") agents inspected Mr. Flores' three checked bags and found that items packed in the checked bags were labeled with receipts from Hernandez Express. The ICE agents also examined Mr. Flores' carry-on bags and found numerous small packages of currency, each tagged with a receipt from Hernandez Express. In all, Mr. Flores carried a total of $101,431.

Mr. Flores was interviewed by the ICE agents. During his interview, Mr. Flores told the agents that he was employed as a courier by Hernandez Express, which is owned by Mr. Flores' brother-in-law. However, Mr. Flores changed his story a number of times regarding his receipt of the defendant property. Initially, Mr. Flores stated that he had only declared $21,910, instead of the $101,431 that he was carrying, because only the $21,910 belonged to him.[6] Subsequently, Mr. Flores told the agents that he had only declared the $21,910 because that was all he possessed at the time he had filled out the required form. Mr. Flores claimed that just prior to boarding his flight, an unknown man had given him the rest of the money, and Mr. Flores did not have time to go back and declare the additional monies.

Eventually, Mr. Flores again changed his story and stated that he had been given

---

[6] Because these monies were declared, they were not forfeited in this action. Also, Mr. Flores was given $431.00 at the time of the seizure for humanitarian purposes.

additional monies as soon as he arrived at the Atlanta Airport. Mr. Flores explained that these monies were given to him by a boy, age 15, who flew on the same flight as Mr. Flores from Washington, D.C. Mr. Flores told the agents that he had gotten a telephone call from the owner of Umana Express who told Mr. Flores that she did not trust the boy to carry the monies to El Salvador. Mr. Flores stated that the boy had later gotten on the flight to El Salvador. Mr. Flores was subsequently released and all of the currency was seized.

From this investigation and the other administrative claims that were filed, the government had no evidence to support Mr. Montoya's claim to any of the defendant property. Mr. Montoya's bald assertion of an interest in the defendant property, unsupported by any additional evidence or valid legal theory, was, and still is, insufficient to establish standing in this case.

Despite these facts, after Mr. Montoya filed an administrative claim in April 2005, he was served with the government's forfeiture complaint in August 2005, and advised that the complaint had been filed in a letter dated October 27, 2005. Additionally, copies of the complaint and warrant of arrest were sent to Mr. Montoya's business. Yet, to this day, he has failed to file either a verified claim or answer in this case. We have no proof beyond Mr. Montoya's own statements to support his claim to the defendant property. Thus, Mr. Montoya's allegations that, after he missed deadlines, he was somehow misled or mistreated by the government are both disingenuous and irrelevant.

### III.     The Government Can Meet Its Burden of Proof to Forfeit the Defendant Property

Mr. Montoya has stated that if his motion is granted, he intends to challenge the government's reliance on 31 U.S.C. §§ 5317, 5324, and 5332 as grounds for the forfeiture. He

also argues that allowing him to defend against this forfeiture action is in the interest of the public policy underlying the statute. The government submits that the evidence, legislative history, and statutory language, on which the government relies, support the forfeitabilty of the defendant property.

### 31 U.S.C. § 5316

The government is not required to prove "that the person who allegedly failed to comply with the reporting requirement of § 5316(a) either had actual knowledge or intended 'willfully' to violate that requirement." *United States v. $145,139.00*, 18 F.3d 73 (2d Cir. 1994), *cert. denied sub nom.* In this case, Mr. Flores was in possession of the defendant property and he admitted that he did not comply with the reporting requirement. The government, therefore, can prove by a preponderance of the evidence that a violation occurred and that the defendant property is subject to forfeiture, regardless of whether Mr. Flores was acting on his own behalf or as Mr. Montoya's agent.

### 31 U.S.C. § 5332

Section 5332 of Title 31 of the United States Code, also referred to as the "bulk cash smuggling" statute, was enacted in October 2001 as part of the USA Patriot Act, Pub. L. 107-56, Tit III § 371, 115 Stat. 272, 336-38 (2001). This statute criminalizes the unreported transport of large quantities of currency rather than merely the failure to report such transport. Imposition of civil forfeiture under this section is predicated on the commission of the crime of currency smuggling.

Recognizing that smuggling a large quantity of cash is "one of the most reliable warning signs of drug trafficking, terrorism, money laundering, racketeering, tax evasion and similar

crimes," Congress stated that the purposes of Section 5332 are to: (1) make the act of smuggling bulk cash itself a criminal offense; (2) authorize forfeiture of any cash or instruments of the smuggling offense; and (3) emphasize the seriousness of the act of bulk cash smuggling. H.R. 3162, 107th Cong., § 371(a)(3) and (b) (2001). A Congressional finding in regard to the enactment of this statute reads:

> The current penalties for violations of the currency reporting requirements are insufficient to provide a deterrent to the laundering of criminal proceeds. In particular, in cases where the only criminal violation under current law is a reporting offense, the law does not adequately provide for the confiscation of smuggled currency. In contrast, if the smuggling of bulk cash were itself an offense, the cash could be confiscated as the *corpus delicti* of the smuggling offense.

H.R. 3162, § 371(a)(6).

Based upon the events described above, and Mr. Flores' admissions regarding the evasion of the currency reporting requirement and knowingly concealing the defendant property, the United States can meet its burden of establishing the forfeitability of the property by a preponderance of the evidence. In no way has Mr. Montoya explained how he intends to effectively challenge the government's use of these statutes, and given Mr. Flores' statements and the evidence in this case, the missing explanation is not surprising.

### IV.     Mr. Montoya Is Not An Innocent Owner Under 18 U.S.C. § 983

As a threshold matter, there is no constitutional "innocent owner defense" or other exemption from the effects of forfeiture based upon a party's innocent state of mind. *Bennis v. Michigan*, 516 U.S. 442 (1996) (rejecting claimant's argument that her interest should not be forfeited because she did not know her property would be used to violate the law). "To the extent that such forfeiture provisions are applied to lessors, bailors, or secured creditors who are

innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 687-88 (1974) (upholding a Puerto Rican civil forfeiture statute).

Unless a statute expressly provides a defense or exemption to forfeiture for third-party interests, there is no such defense or exemption. Once the government establishes forfeitability, the burden shifts to a claimant to establish an innocent owner defense by a preponderance of the evidence. *See* 18 U.S.C. § 983(d)(1).

A. **Mr. Montoya is Not a Bailee**

Mr. Montoya alleges that he is a bailee in this action and, therefore, an owner for purposes of the innocent owner provision in 18 U.S.C. § 983(d). Assuming that Mr. Montoya's allegations are true, the government submits that for purposes of this action, Mr. Montoya is a bailor, not a bailee, since Mr. Montoya has alleged that he entrusted a courier (apparently Mr. Flores) with his monies. The courier would be the bailee[7] and Mr. Montoya the bailor.[8] Moreover, Mr. Montoya would have standing to contest the forfeiture of the defendant property

---

[7] In fact, 31 U.S.C. § 5316 makes it clear that it was Mr. Flores, the courier, who would be the "agent" or "bailee" who was transporting the currency and was required to file the report concerning the currency.

[8] Any individuals who may have given monies to Mr. Montoya are his unsecured creditors and do not qualify as "owners" under 18 U.S.C. § 983(d)(6), because they cannot trace their interest into any particular property. Like depositors in a bank, they do not have standing to challenge the seizure or forfeiture of the defendant property. Mr. Montoya's assertion that he can resolve disputes between the government and 97 other parties by being allowed in this action demonstrates a lack of understanding of forfeiture law. If these individuals have disputes, it is with Mr. Montoya, not the United States government. *See U.S. v. BCCI Holdings (Luxembourg) S.A. (Petition of Chawla)*, 46 F.3d 1185 (D.C. Cir. 1994).

only if he can establish that the elements of bailment under state law have been satisfied. *See United States v. $61,483.00 in U.S. Currency*, 2003 WL 1566553 (W.D. Tex. 2003); *United States v. $79,000 in Account Number 2168050/6749900*, 1996 WL 648934 (S.D.N.Y. 1996).

In any event, even for Mr. Flores, the term "owner" for purposes of the innocent owner defense under 18 U.S.C. § 983(d)(6), states that it "does not include a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized."

The only bailors of the smuggled currency that were identified by Mr. Flores were Hernandez Express and Umana Express. Hernandez Express has offices in both Virginia and Washington, D.C. An administrative claim was filed on behalf of Mr. Flores as a representative of Hernandez Express by Ayala and Associates. This claim was for $100,820.00. Mario Umana of Umana Express has offices in Washington, D.C., and El Salvador and filed an administrative claim for $33,935.44. Although both of these entities were notified of the civil forfeiture action, neither chose to file verified claims or answers to the government's Verified Complaint *In Rem*. Significantly, during his interview Mr. Flores never mentioned Mr. Montoya or Concord Express, and in his administrative claim, Mr. Flores never identified Mr. Montoya as a bailor of the defendant property.

### B. These Are Not Untainted Monies

It is equally questionable whether Mr. Montoya could meet the requirement in the innocent owner provision in 18 U.S.C. § 983(d)(2)(A) concerning his knowledge of the conduct giving rise to a forfeiture, because Mr. Montoya has been operating an unlicensed[9] money

---

[9] Mr. Montoya has supplied documents showing that he has a Virginia "business license." This is not the license required to be in compliance with 18 U.S.C. § 1960 or 31 U.S.C. § 5330. Operators of money transmitting businesses are required to register with the U.S. Department of

transmitting business[10] for some years in violation of 18 U.S.C. § 1960 and 31 U.S.C. § 5330. Thus, the government disputes Mr. Montoya's assertion that these were "untainted funds."

Section 1960 of Title 18, United States Code was enacted in 1992 and makes it a federal crime to conduct a money transmitting business without a State license in any State where a license was required.[11]  *See United States v. Velastegui*, 199 F.3d 590 (2d Cir. 1999) (because state law prohibits agents of money transmitters from transmitting money directly, defendant violated Section 1960 when he transmitted money directly to Mexico instead of forwarding it to the licensed principal).  In 1994, Congress enacted 31 U.S.C. § 5330, requiring all money transmitting businesses – including those already licensed by the States – to register with the Secretary of the Treasury.  Section 1960 was amended to make it an offense to operate without complying with 31 U.S.C. § 5330 and the Treasury regulations.[12]

In 2001, Congress again amended the statute to address serious concerns regarding money

---

Treasury's Financial Crimes Enforcement Network ("FinCEN") and to operate with a State license for money transmitting.  Neither Mr. Montoya or his company are registered with Virginia or FinCEN as money transmitters.

[10] A money transmitting business includes "any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial system." *See* 31 U.S.C. § 5330(d)(1)(A).  Section 1960(b)(2) of Title 18, United States Code defines "money transmitting" to include transferring funds on behalf of the public by any and all means including, but not limited to, transfers by courier.

[11] According to Mr. Montoya, he operates in Virginia, which requires a state license for money transmitting businesses.  In fact, Virginia requires the submission of an extensive application, including disclosure forms and surety bonds, in order to obtain such a license.

[12] The federal registration requirements became effective in December 2001.

10

service businesses that operate outside of the traditional business or financial structures.[13] The government is not required to prove that an unlicensed money transmitter operating without a State license knew that a license was required or that he knew that operating without a license was a crime. A money transmitter can be prosecuted under 18 U.S.C. § 1960 when he or she: (1) operates without a State license; (2) operates in violation of the Treasury regulations requiring all money service businesses to register with FinCEN; or (3) transfers money knowing that the funds being transmitted are derived from a criminal offense, or are intended to be used for an unlawful purpose.

Under 31 U.S.C. § 5330, any person who owns or controls a money transmitting business must register the business (whether or not the business is licensed as a money transmitting business in any state) with the Secretary of the Treasury, no later than the end of the 180-day period beginning on the date on which the business is established. The penalty for failure to comply with this section is $5,000 for each violation. Each day the violation continues constitutes a separate violation.

Finally, with these amendments, Congress provided authority for civil forfeiture under 18 U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. § 1960. Thus, if the defendant property was, in fact, involved in Mr. Montoya's business as he alleges, Mr. Montoya's conduct in operating an unlicensed money transmitting business provides an additional basis for the forfeiture of the defendant property. His motion plainly demonstrates that he does not have a meritorious claim and, therefore, has not met the final prong under Fed. R. Civ. P. 60(b) to vacate the default

---

[13] The amendment became effective October 26, 2001. The revised implementing regulations under 31 U.S.C. § 5330 were effective on December 31, 2001. *See* 31 C.F.R. § 103.41.

judgment in this case.

## Conclusion

For these reasons, it is respectfully requested that this Court deny Mr. Montoya's Renewed Motion to Vacate Judgment By Default.

Respectfully submitted,

_/s/_____
KENNETH L. WAINSTEIN
United States Attorney
D.C. Bar No. 451058


_/s/_____
WILLIAM R. COWDEN
Assistant United States Attorney
D.C. Bar No. 426301

_/s/_____
JUDITH A. KIDWELL
Assistant United States Attorney
555 4th St., N.W. Room 4818
Washington, D.C.   20530
(202) 514-7250

## CERTIFICATE OF SERVICE

      I, hereby, certify that copies of the foregoing Opposition to Renewed Motion to Vacate Default Judgment were served by electronic filing upon Martin F. McMahon, Esq. and Lisa D. Angelo, Esq., Martin McMahon & Associates, as counsel for Mr. Alberto Montoya, 1150 Connecticut Avenue, N.W. Washington, D.C. 20036, on this 14th day of June, 2006.

_____
JUDITH A. KIDWELL
Assistant United States Attorney