# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>555 Fourth St., N.W.<br>Washington, D.C. 20530<br><br>Plaintiff(s), | ) | |
| v. | ) | Case No: 1:05-cv-01364<br>Judge: Reggie B. Walton<br>Date Filed: July 8, 2005 |
| SEVENTY-NINE THOUSAND THREE HUNDRED TWENTY-ONE DOLLARS ($79,321.00) IN UNITED STATES CURRENCY ),<br><br>Defendant(s) | ) | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF CLAIMANT'S MOTION TO VACATE DEFAULT JUDGMENT ENTERED BY THIS COURT ON DECEMBER 21, 2005.**

## I. INTRODUCTION

In the course of responding to the Claimant's valid interest in the seized funds, the Government has chosen to include veiled threats of criminal prosecution and excessive fines against the Claimant.[1] As such, this reply will do the following: (1) discuss the salient facts including those purposely omitted by the Government; and (2) discuss why the Claimant meets all three prongs of the substantive test for vacating a judgment under Rule 60(b). Within Part 2, this Reply will address the innocent owner defense and the inapplicability of 18 U.S.C. § 1960 with which the Government now threatens the Claimant in the eleventh hour.

[1] Gov't Opp'n Mot. at 2, n. 2 ("*if the Claimant's motion is granted*, the government will seek to amend its complaint to add an additional basis for forfeiture…that the defendant property was involved in his unlicensed money transmitting business operations – a violation of 18 U.S.C. § 1960.") (emphasis added)

## II.     FACTUAL AND PROCEDURAL BACKGROUND

The Claimant is a citizen of both the United States and El Salvador. For the past ten (10) years, the Claimant has owned and operated a successful courier business. The Claimant is a resident of the State of Virginia with his permanent address at 930 S. Wakefield St., Arlington, VA, 22204. His courier business is located in Virginia at 944 S. Wakefield St., Suite 101, Arlington, VA, 22204. The Claimant is licensed as a Courier Services & Currency Commission Agent in Virginia. Given the nature of his business, the Claimant frequently travels to and from the United States and El Salvador carrying numerous packages including but not limited to monies, clothes, and electric items in the form of "packages" as requested by his international and domestic customers.[2]

In or about March 2005, the Claimant grew ill and due to this medical condition, he was forced to recuperate in El Salvador. As such, he was forced to secure the temporary assistance of a courier named Santos Efrain Flores to carry the packages that the Claimant himself would have otherwise carried back and forth from the U.S. and El Salvador on behalf of his customers. On or about March 21, 2005, Mr. Flores was detained and the package he was carrying (which included a money package in the amount of $34,600 for the Claimant) was confiscated at the Atlanta International Airport. (Ex. A) As noted in the Government's opposition, the reason for Mr. Flores' detention and the confiscation of the packages he was carrying was that Mr. Flores failed to claim the proper amount of money he was taking from the U.S. to El Salvador.[3] Mr. Flores explained to the government, during his detention,[4] that his failure to report all of the funds that he was carrying was unintentional. The Government also notes that Mr. Flores did

---

[2] See Montoya Affidavit attached hereto as Exhibit A ("Ex. A")
[3] See Gov't Opp'n Mot. at 4; It should be noted, however, that the Claimant has never been detained nor had any packages he personally carried confiscated for failure to declare in ten (10) years.
[4] See id.

comply with the reporting requirement in so far as he reported carrying a sum in excess of $10,000, specifically $21,910, and that Mr. Flores explained to the government that he was carrying the funds for a courier company.[5]

When Mr. Flores informed the Claimant on March 22, 2005 that U.S. Customs had confiscated all of the monies he was carrying because he did not declare everything, the Claimant flew from El Salvador to Atlanta, Ga. to speak with someone about the confiscated money. (Ex. A) On April 8, 2005, the Claimant spoke with Paula L. Primm from the Fines, Penalties & Forfeitures Office, who gave him papers to sign and told him to explain what interest he had in the seized funds. (Ex. A) Acting pro se, the Claimant brought these papers to his home in Virginia and called his friend[6] to help him complete the papers since the Claimant is not a native English speaker and had difficulty understanding the documents. With the help of his friend, the Claimant wrote a letter and completed the government documents she provided him with and which he submitted to Ms. Primm on April 12, 2005.[7] Ms. Primm then told the Claimant that it would take five (5) months to resolve the matter. (Ex. A)

During July 2005, the Claimant received a request from the Government that he obtain a statement from each of his customers declaring that they were sending money from the U.S. to El Salvador for their families and for no illegitimate purpose. During this same month, the Government filed its Verified Complaint for Forfeiture, In Rem, which the Claimant received notice of in August. Again, acting pro se, the Claimant responded to the Government's request for documentation and the Warrant In Rem, by obtaining statements and receipts from ninety-six

---

[5] See id.
[6] The Claimant's "friend" is also his interpreter who completed an affidavit and is attached hereto as Exhibit B ("Ex. B").
[7] See Letter and Completed Documents attached hereto as Exhibit F ("Ex. F").

3

of his customers and mailing these to the government on August 27, 2005.[8] The Claimant received no response from the government between August 27, 2005 and mid October, 2005. (Ex. A) Then, in late October 2005, a letter arrived from the Government[9] which the Claimant, through his friend, understood to mean that he would get his customer's money back sometime after January 5, 2006. (Exs. A, B) On November 21, 2005, however, the Government filed an affidavit and entry for default. The Clerk of the Court entered the default on November 22, 2005. On December 20, 2005, the government filed its Motion for Default Judgment and a Decree of Forfeiture which was entered by this Court on December 20, 2005. The Claimant received notice of the default judgment when he returned from El Salvador after the holidays in early January 2006. (Ex. A)

In sum, one third of the monies confiscated on or about March 20, 2005 by the Government should be returned to the Claimant as his personal property since he is innocent of any wrongdoing and seeks only to distribute the money to needy beneficiaries in El Salvador.[10] Moreover, as detailed in the annexed affidavits, any non-responsiveness on the Claimant's part was the result of being misled by the Government into thinking that he had satisfied any and all requirements as to proving the legitimacy of the funds which had been seized. When the above-noted facts are coupled with the Claimant's lack of language skills and the frequency of his trips out of the country, it is clear that the ground of excusable neglect for vacating a judgment under Rule 60(b) is a particularly cogent basis for relief in this case.

---

[8] See Customer Receipts attached hereto as Exhibit E ("Ex. E")
[9] See Forfeiture Office letter attached hereto as Exhibit C ("Ex. C").
[10] See Document Regarding Remittances in the Salvadoran Economy attached hereto as Exhibit D ("Ex. D").

### III. THIS COURT SHOULD VACATE THE DEFAULT JUDGMENT ENTERED AGAINST THE CLAIMANT PURSUANT TO RULE 60(B)(1).

As noted above, Defendants' failure to answer or respond to Plaintiffs' complaint was only due to excusable neglect. In <u>Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership</u>, the Supreme Court provided guidance as to the meaning of the term "excusable neglect." The Court found that as used in Rule 60(b)(1), the word "neglect" encompasses negligence and carelessness. 507 U.S. 380, 394 (1993). As this Court has previously opined, "this case appears to [this Court] a paradigmatic one for relief under Rule 60(b) for 'mistake' or 'excusable neglect.'" J. Walton, Op. (May 22, 2006).

Typically, courts use a three-pronged standard for setting aside both defaults and default judgments. 12 Moore's Federal Practice ¶ 60.22[3][b] (3d ed. 2003). Relief is generally granted for defaults if (1) the plaintiff will not be prejudiced by granting the relief; (2) the Claimant's failure to respond to the government's complaint was not willful; and (3) the Claimant has a meritorious defense. <u>See, e.g.</u>, <u>Farnese v. Bagnasco</u>, 687 F.2d 761, 764 (3d Cir. 1982); <u>United States v. Dimucci</u>, 879 F.2d 1488, 1495 (7th Cir. 1989); <u>United Coin Meter Co., Inc. v. Seaboard Coastline R.R.</u>, 705 F.2d 839, 845 (6th Cir. 1983); <u>Falk v. Allen</u>, 739 F.2d 461, 463 (9th Cir. 1984). As noted below, the Claimant satisfies all three prongs.

#### A. <u>Plaintiffs Will Not Be Prejudiced.</u>

Although this Court noted in its May 22, 2006 opinion that the Claimant has satisfied this prong, the Claimant submits that the danger of prejudice to the Plaintiffs is minuscule given the amount of funds involved and the short period of time between the entry of the default judgment and the Claimant's immediate attempts to dispute it. The danger of prejudice to the Claimant however, and the beneficiaries in El Salvador, is extremely large given the fact that due to excusable neglect, the Claimant will lose a considerable amount of money, his reputation as a

5

reliable courier, and will never have an opportunity to present his valid and meritorious defenses. Given the foregoing, the Claimant satisfies this prong.

      **B.**      **Culpable Conduct Was Not The Cause For The Default.**

Although this Court also noted in its May 22, 2006 opinion that the Claimant has satisfied this prong, the Claimant submits that his failure to respond to Plaintiffs' complaint was not deliberate or willful. Only in extreme cases will a district court deny a Rule 60(b)(1) relief due to "culpable conduct." For example, in African Methodist Episcopal Church, Inc. v. Ward, the district court denied a Rule 60(b) motion because defendants "simply ignored complaint and summons and offered no reason for their failure to respond." 185 F.3d 1201, 1202-1203 (11th Cir. 1999). Unlike this example, the Claimant did not ignore the Government's complaint; rather, the Claimant's failure to respond was due to his limited English skills, his illness, his frequent trips out of the United States, and most importantly the fact that he was misled by the Government into believing that he had done all he could. Given the foregoing, the Claimant satisfies this prong.

      **C.**      **The Claimant Has A Meritorious Defense.**

The existence of a meritorious defense is an essential criterion in determining whether a Court should set aside a default judgment. Davis v. Musler, 713 F.2d 907, 915-916 (2d Cir. 1983). However, showing a "meritorious" defense does *not* mean that the moving party must demonstrate the likelihood of prevailing on that defense. See id. at 916 (holding that a defendant seeking to vacate a default judgment need not conclusively establish the validity of the defense(s) asserted") (emphasis added). Contrary to what the Government's Opposition suggests, the Claimant need only show that he has a defense to the forfeiture; *he need not prove his defense*. Here, the Claimant is able to present two meritorious defenses to the forfeiture action.

1. <u>The Claimant May Assert An Innocent Owner Defense Under 18 U.S.C. § 983.</u>

To assert the innocent owner defense, the Claimant must show by a preponderance of the evidence that he is in fact an *innocent owner*.

First, the Claimant can show that he was an *owner* under § 983(d) at the time of the forfeiture because he is a bailee. The Claimant falls into the exception for bailees under 18 U.S.C. § 983(d)(6)(B)(ii) for two reasons: (1) the bailors have been identified (<u>see</u> Ex. E); and, (2) the Claimant has a colorable legitimate interest in the property as he will be held personally liable for repayment of the seized funds if they are not returned to him. The Government submits that the Claimant is not an owner because he is a bailor rather than a bailee. Moreover, the Government cites inapplicable case law. With respect to their "bailor" argument, this question begs a second question of whether the Claimant is even an owner at all. To answer this question a more elaborate analysis is required (which must include an application of state law) and at this stage, such an analysis is beyond the scope of the instant Rule 60(b) motion.[11] With respect to their case law, the Government cites <u>Bennis v. Michigan</u>, 516 U.S. 442 (1996) in regard to the availability of the innocent owner defense. The <u>Bennis</u> case is inapplicable to the instant matter, however, because the Michigan statute at issue in <u>Bennis</u> did not have an innocent owner defense.

Second, the Claimant can show that he was *innocent* of any wrongdoing because he did not know of the conduct giving rise to the forfeiture. The Government attempts to undermine the Claimant's position by alleging, without any evidence or factual support, that the Claimant violated 18 U.S.C. § 1960. In fact, § 1960 is both inapplicable to the Claimant and inapposite to

---

[11] <u>See</u> <u>United States v. One Lincoln Navigator 1998</u>, 328 F.3d 1011 (8th Cir. 2003).

the innocent owner defense.[12]

Section 1960 provides penalties for "[w]hoever *knowingly* conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business." 18 U.S.C. § 1960(a) (emphasis added)  The government bases its use of § 1960 purely on assumptions regarding the operation of the Claimant's business and fails to provide support for its contention that the Claimant need not have *known* that he was operating without a State license, if in fact he even was.  Assuming arguendo the Government's lack of mens rea argument carries any weight herein, the court in United States v. Talebnejad, 342 F. Supp. 2d 346 (D. Md. 2004) held that Congress' attempt to extinguish the mens rea requirement in § 1960(b)(1)(A) was inoperative in Maryland because its state law required a showing of a "knowing" and "willful" violation of the state money transmitting laws.  As noted above, to better respond to the Government's 11th hour threat, a more elaborate analysis is required (which must include an application of state law[13]) and at this stage, such an analysis is beyond the scope of the instant Rule 60(b) motion.

Finally, even if a violation of § 1960 could be established as a basis for forfeiture, this does not bar the application of the Innocent Owner Defense.  In Section B of the Government's opposition, entitled "These Are Not Untainted Monies," the Government has confused the question of whether funds are forfeitable with the question of whether an innocent owner has a claim to forfeitable funds.  In this sense, § 1960 is inapposite to whether the Claimant can assert the innocent owner defense because at best, an alleged violation of the statute only establishes

---

[12] The Government's only possible reason for bringing in § 1960, apart from making veiled threats of further prosecution and imposition of excessive fines under this statute, is to make the argument that a violation of this statute affects the Claimant's ability to assert the Innocent Owner defense under § 983.  However, a closer reading of § 1960 and § 983(d) shows that § 1960 is not only inapplicable to the Claimant, but it is also inapposite to the Innocent Owner defense.

[13] A violation of § 1960 cannot be punishable unless the lack of a license is punishable in the relevant state.

8

that the funds were possibly forfeitable. It *does not*, however, establish that the Claimant was *not* an innocent owner, because § 983(d) explicitly states that an innocent owner "*did not know* of the conduct giving rise to the forfeiture." 18 U.S.C. § 983(d)(2)(A)(i) (emphasis added). Because the Government threatens the Claimant with a provision it assumes he violated, and the Government consequently has no evidence that he knowingly violated the statute, the Government establishes neither the offense nor the applicability of the offense to the Claimant's valid and meritorious *Innocent Owner* defense.

2. The Statutory Grounds For Forfeiture And Relevant Case Law Do Not Support Forfeiture In A Situation Like The Claimant's.

The Claimant can challenge the grounds for the forfeiture under §§ 5317, 5324 and 5332 of Title 31 of the United States Code ("U.S.C.") because the Government cannot establish that the Claimant possessed the requisite intent to evade the reporting requirement.[14] Although the language of §§ 5324 and 5332 explicitly states that the intent or purpose of evading the reporting requirement under § 5316 is a necessary element of the offense, the Government relies on United States v. United States Currency in the Amount of $ 145,139.00, 18 F.3d 73 (2d Cir. 1994) to argue that a violation of the reporting requirement in § 5316 requires no proof of knowledge or willfulness. The Government's case, however, relies on the civil nature of the forfeiture statute, and the Government ignores the fact that the Supreme Court has found certain civil forfeitures to be punitive in nature.[15] Furthermore, as a result of a forfeiture statute's punitive nature, even if the funds seized by the Government could be proven forfeitable under § 5317, the forfeiture could nonetheless be found improper as a violation of the Excessive Fines Clause of the Eighth

---

[14] 31 U.S.C. § 5324(c); 31 U.S.C. § 5332(a)(1)
[15] Austin v. United States, 509 U.S. 602 (1993) (holding that the provision of an innocent owner defense in the statute served to focus on a determination of culpability in a way that made the forfeiture look more like punishment); see also United States v. Bajakajian, 524 U.S. 321, 331, n. 6 (1998).

Amendment.[16]

The Claimant deserves the opportunity to make this argument as well as his innocent owner argument in an answer he is prepared to file should this Court grant him the relief requested herein. Given that the Claimant need not prove his entire case at this juncture, Rule 60(b) relief is warranted a fortiori since the Claimant has two meritorious defenses to the forfeiture and has thus, satisfied all three prongs of the set-aside test.

## IV. CONCLUSION

In its Opposition, the Government has stepped outside the parameters of responding to the Claimant's Rule 60(b) motion. In an attempt to deprive the Claimant of his basic right to due process in retaliation for pursuing his claim, the Government has impliedly threatened the Claimant with excessive fines and criminal prosecution. At the end of the day, this case is about $34,600, which as a United States citizen, the Claimant has the right on behalf of himself and his clients, to attempt to reclaim. *Query: What kind of message is the Government trying to send when it threatens a decent citizen who had the audacity to ask a lawyer for help in reclaiming some of his property?* In addition to the foregoing reasons for vacating the default under Rule 60(b), this kind of retaliation and abuse of authority is completely contrary to public policy.

---

[16] See United States v. Bajakajian, 524 U.S. 321 (1998) (holding in an in personam forfeiture, which the Court said also applies to in rem forfeitures, that the district court may consider whether a forfeiture was an excessive fine under the Eighth Amendment of the Constitution).

For any or all of the foregoing reasons, the Claimant asks the Court to grant his Rule 60(b) motion.

                                                    Respectfully Submitted,

                                                    **MARTIN McMAHON & ASSOCIATES**

                            BY                 /s/
                                          Martin F. McMahon, #196642
                                          Lisa D. Angelo, #491206
                                          1150 Connecticut Ave. N.W., Suite 900
                                          Washington, DC 20036
                                          (202) 862-4343
                                          (202) 828-4130 (fax)

                                          *Attorneys for Defendant Montoya*

## CERTIFICATE OF SERVICE

I HEREBY certify that on this 21st day of June, 2006, a copy of the foregoing was sent via electronic mail to Judith Kidwell, Esq., U.S. Attorney's Office, Asset Forfeiture Unit, Criminal Division, 555 Fourth St., N.W., Room 4822, Washington, DC 20530.

                                                        /s/
                                            Martin F. McMahon, Esq.