## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

———————————————————————— )
UNITED STATES OF AMERICA,                )
555 Fourth St., N.W.                           )
Washington, D.C. 20530                      )
                                                          )
          Plaintiff(s),                              )
                                                          )
     v.                                                 )   Case No:        1:05-cv-01364
                                                          )   Judge:           Reggie B. Walton
SEVENTY-NINE THOUSAND THREE     )   Date Filed:     July 8, 2005
HUNDRED TWENTY-ONE DOLLARS    )
($79,321.00) IN UNITED STATES          )
CURRENCY ),                                      )
                                                          )
          Defendant(s)                            )
———————————————————————— )


**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CLAIMANT'S
MOTION TO DISMISS GOVERNMENT'S COMPLAINT FOR FORFEITURE *IN REM***

**I.     INTRODUCTION**

In its amended complaint for forfeiture in rem, the Government asserts that forfeiture of

the defendant currency is proper under Title 31 §§ 5316, 5317, 5324, 5332 and Title 18 §§ 981

and 1960 of the U.S. Code.  The Government, however, fails to properly allege the basis for

forfeiture under said sections because the Government has not alleged the requisite knowledge

and intent to violate these provisions.  Fed. R. Civ. P. Supp. R. E(2) requires a higher pleading

standard such that a claimant (of the defendant currency) can frame a responsive pleading

without moving for a more definite statement.  In attempting to frame a responsive answer to the

Government's complaint, the claimant Alberto Montoya (hereinafter "Claimant") cannot

properly respond due to the lack of specific allegations as to knowledge or intent.  As such, the

Claimant submits the instant motion and prays for relief in the amount of $34,600 of the

defendant currency which was confiscated by the Government on or about March 21, 2005.

## II.    THE GOVERNMENT'S COMPLAINT FAILS TO SATISFY THE SUPPLEMENTARY RULE E(2) HEIGHTENED PLEADING REQUIREMENT.

Supplementary Rule E(2) requires a forfeiture complaint "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading."  Fed. R. Civ. P. Supp. E(2);  U.S. v. $8,221,877.16 in U.S. Currency, 330 F.3d 141, 152 (3d Cir. 2003).  "[T]his particularity requirement arises out of the drastic nature of forfeiture actions, which allow for the seizure of property while the claim on the merits is litigated.  Rule E(2) is thus an important safeguard against the government's seizing and holding property on the basis of mere conclusory allegations that the property is forfeitable."  Id. at 154.

In its Complaint, the Government brings three Counts against the defendant currency. All of these counts fail to meet the higher pleading standard of Supp. Rule E(2) because they fail to "allege specific facts sufficient to support an inference that the property is subject to forfeiture under the statute," (United States v. 120 Beacon Street, 1987 U.S. Dist. LEXIS 10661, at *8 (D. Mass. Nov. 6, 1987); namely, that either the claimant or Mr. Flores knowingly and/or intentionally violated the statutes on which forfeiture was based.

### A.    The Government Makes Insufficient Allegations under §§ 5316, 5317, 5324, and 5332 in Counts I and II of the Complaint

The Government cites 18 U.S.C. §§ 5316, 5317, 5324, and 5332 as bases for forfeiture herein.  A close reading of these statues, however, demonstrates that forfeiture is only proper in the instant case if Mr. Flores, from whom the funds were seized, intended to evade the reporting requirement contained in § 5316.  As discussed infra,[1] the Government fails to allege specific facts which support an inference of the requisite intent to evade; and therefore forfeiture under §§ 5316, 5317, 5324, and 5332 was improper.

---

[1] Parts II.A.1-4.

      1.    <u>§§ 5316 & 5332</u>

The reporting requirements of § 5316 state in relevant part: "a person or an agent or bailee of the person shall file a report under subsection (b) of this section when the person, agent, or bailee *knowingly*--(1) transports, is about to transport, or has transported, monetary instruments of more than $ 10,000 at one time--(A) from a place in the United States to or through a place outside the United States." 31 U.S.C. § 5316(a) (emphasis added). In its complaint, the Government admits that Mr. Flores filed a report as required under § 5316 declaring that he was carrying an amount in excess of $10,000. To this extent, Mr. Flores complied with § 5316. However, the Government alleges that the amount of money declared was not the same as the amount which Mr. Flores was actually transporting. Given that § 5316 simply provides the elements of the reporting requirement, and does not provide for forfeiture for non-compliance with any of its provisions, § 5316 is clearly not a ground for forfeiture. Consequently, under Count II in its Complaint, the Government then relies on § 5332 as a basis for forfeiture.

For forfeiture to be proper under § 5332, the Government must allege specific facts showing intent to evade the reporting requirements of § 5316. Although the Government expects the court to draw this conclusion simply from the allegation that the money was packed in small courier bags, this allegation is no more than a conclusory and argumentative inference. Furthermore, by relying on this single fact, the Government asks this Court to draw an inference that is in direct conflict with the Government's statement that Mr. Flores admitted he was an employee of the courier company. The fact alleged is simply insufficient to support the desired inference since it establishes no more than Mr. Flores' truthfulness about the courier company for which he allegedly works. Consequently, the Government has failed to meet the heightened pleading standard of Supplemental Rule E(2) and cannot withstand dismissal of its conclusory

allegations under Count II of the Complaint.

        2.      <u>§§ 5317 & 5324</u>

Under Count I of its Complaint, the Government alleges that forfeiture is proper under § 5317 for violation of § 5324(c)(2).  However, § 5324(c)(2) states in relevant part:  "No person shall, *for the purpose of evading the reporting requirements* of § 5316… (2)  file or cause or attempt to cause a person to file a report required under § 5316 that contains a material omission or misstatement of fact."  31 U.S.C. § 5324(c)(2) (emphasis added).  In its complaint, the government has made no allegation that Mr. Flores made material misstatements "for the purpose of evading the reporting requirements of § 5316."  Consequently, the Government has failed to plead an essential element of the statutory basis for forfeiture.

Since the Government's Complaint completely lacks facts from which a reasonable inference can be drawn that the instant Claimant intended to violate any of the foregoing statutes on or about May 21, 2005, when the defendant currency was seized, the allegations contained in Count I of the Complaint are also insufficient to withstand dismissal under Supplemental Rule E(2).

**B.**      <u>The Government's Allegations under § 1960 In Count III Of the Complaint Are Insufficient For Failure To Allege Knowledge</u>

In the third Count of its Complaint, the Government asserts that forfeiture is proper because 18 U.S.C. § 981 provides for the civil forfeiture of monies that are affiliated with a violation of 18 U.S.C. § 1960.  Pursuant to its allegations, the Government relies on a violation of § 1960(b)(1)(A) as the basis for forfeiture because it cites only the alleged failure of Hernandez Express to obtain a license in Virginia or the District of Columbia in support of its allegations.  However, under either § 1960(a) or § 1960(b)(1)(A), the Government failed to properly allege the elements of this violation.

In its Complaint, the Government failed to allege with particularity, as required under Supp. R. E(2) the requisite knowledge, namely, that Hernandez Express knew it was operating a money transmitting business and that Hernandez Express knew it was operating without a state license.  Given the purpose for a heightened pleading standard in the civil forfeiture context, the Government should be required to allege at least the basic elements of this general intent crime, so as to avoid the possibility of treating civil forfeiture provisions as strict liability violations.

III.    **EVEN IF THIS COURT FINDS THE GOVERNMENT'S PLEADING IS SUFFICIENT UNDER COUNT III, APPLICATION OF § 1960(b)(1)(A) VIOLATES THE EQUAL PROTECTION CLAUSE OF THE FIFTH AMENDMENT**

Even if the Government is found to have met its burden in pleading knowledge on the part of the courier company, § 1960(b)(1)(A) should not be applied to the defendant currency because the Claimant submits that § 1960(b)(1)(A) violates the Equal Protection Clause of the Fifth Amendment and is therefore unconstitutional.

Consequently, the Claimant asks this Court to reconsider the decision of its sister court in United States v. Barre, and find that § 1960(b)(1)(A) violates the Equal Protection Clause because it arbitrarily imposes double federal liability on certain citizens without a rational basis for such a distinction. See 324 F. Supp.2d 1173 (D. Colo. 2004) denying motion on reconsideration in 313 F. Supp.2d 1086 (D. Colo. 2004).  In fact, this provision of the statute is more effective in penalizing the unwitting business person, rather then the serious criminals that the forfeiture statutes were originally meant to deter and penalize.[2]

In Barre, a claimant to forfeited funds argued that the arbitrary application of § 1960(b)(1)(A) which depends only on whether the applicable state had passed a criminal licensing statute, violates the Equal Protection Clause. 313 F. Supp. 2d at 1087. After

---

[2] It should be noted that the claimant filing the instant motion is not a criminal, much less the type of serious criminal that the statute was intended to deter.

5

determining that the provision does in fact violate the Equal Protection Clause, the court then granted the Government's motion for rehearing and reversed its prior ruling. Barre, 324 F. Supp. 2d at 1177. On rehearing, the court held that citizens of the states are divided into two "similarly situated" classes in the context of § 1960(b)(1)(A). Id. at 1175. The first category is those who live in states where the lack of a license is punishable as a felony or misdemeanor, and are thus potentially subject to punishment under § 1960(a) and § 1960(b)(1)(A). Id. The second category is those who live in states where the lack of a license is *not* criminally punishable, and consequently *cannot* be subject to punishment under § 1960(b)(1)(A). Id. The court then held that § 1960(b)(1)(A) did not violate the Equal Protection Clause because these two groups were not similarly situated and that there was a rational basis for the distinction. Id. at 1175, 1176.

However, the holding in Barre is flawed because the court's characterization of the two similarly situated groups created by § 1960(b)(1)(A) does not reflect the actual impact of the statute, which is to impose double federal liability on certain citizens and not on others. In the final analysis, these groupings and the effect of the statute lack a rational basis because they are completely arbitrary.

The Claimant submits that the fundamental flaw with the Government's position in Barre (a position which the court adopted on rehearing) is that it improperly relies on United States v. Sharpnack and Clark Distilling Co v. W. Md. Ry. Co. to reach its ultimate conclusion that federal laws that are piggybacked onto violations of state laws are constitutional. See, 355 U.S. 286 (1958); 242 U.S. 311 (1917). Barre's reliance on these cases is flawed because Sharpnack held that the federal Assimilative Crimes Act of 1948 was not unconstitutional for applying to a federal enclave a subsequently enacted criminal law of the state in which the federal enclave was situated. 355 U.S. at 293-94. Likewise is the case with Clark because that matter concerned whether a state law violates the Commerce Clause by regulating an area that is typically an area

of exclusive federal jurisdiction. 242 U.S. 311. Because the courts in <u>Clark</u> and <u>Sharpnack</u> determined that Congress may grant states the power to regulate, or to apply the law of the applicable state, in areas where Congress had *exclusive authority to regulate*, these cases do not support the contention that Congress may bolster the laws of the states by piggybacking federal violations onto existing state laws, *where the jurisdiction is concurrent*.

Thus, since the instant case involves concurrent jurisdiction, the issues are completely different than those considered in <u>Sharpnack</u> and <u>Clark</u>. Ergo, the Claimant asks this Court to reconsider the <u>Barre</u> decision and find that § 1960(b)(1)(A) violates the Equal Protection Clause because, the effect of piggybacking a federal violation onto an existing state law creates an additional and inherently arbitrary layer of federal liability and penalties for certain citizens and not for others, *even though Congress has a concurrent ground upon which it can penalize the same violation under federal law*.

This is the precise effect of § 1960(b)(1)(A) on any money services business operating in a state with a criminal licensing law. The reason this result violates the Equal Protection Clause of the 5th Amendment is that the statute draws an arbitrary distinction between business operators who could potentially violate only one provision of the statute (citizens in states with no criminal licensing laws) and citizens who are potentially liable under 2 provisions of the statute (because they live in a state that has a criminal licensing law), thereby doubling the latter group's exposure to federal prosecution and penalties under the statute.

The arbitrariness of this result is further supported by the fact that if this provision were removed from the statute, there would be no reduction in penalties for failure to license money transmitting businesses. For businesses operating in states that do not pass criminal licensing laws, these businesses would still be subject to federal licensing requirements under § 5330, and consequently would be subject to penalties under § 1960(a) for failure to obtain that license. For

businesses operating in states that pass criminal licensing laws, these businesses would be subject to both federal licensing requirements under § 5330 and the state requirements, as well as penalties under the state law and § 1960(a) for failure to license.  Thus, § 1960(a) alone serves the purpose of bolstering the state licensing laws without raising Equal Protection problems by arbitrarily imposing double liability in states that have criminal licensing laws.

While the Government is likely to argue that this distinction has a rational basis, a closer look at the true effect of the statute shows that the differentiation created by the statute neither furthers the goal stated in the legislative history of supplementing state laws, nor does it achieve any benefit beyond making it easier for the Government to retain seized funds.  Given the various Constitutional implications of this statute, easier prosecution does not seem to be a constitutionally valid basis for upholding the statute.  Furthermore, the cited purpose of supplementing state laws would be better achieved if the statute worked to fill in the gaps by creating liability in states that don't have licensing laws rather than creating double federal liability for citizens of states that already have licensing laws.

**V.     APPLICATION OF § 1960(B)(1)(A) BASED SOLELY ON THE VIOLATION OF A STATE STATUTE ALSO VIOLATES TRADITIONAL PRINCIPLES OF FEDERALISM**

Although Congress' intention was to "bolster" the states' penalties, the effect of the statute is to override the states' ability to choose what they consider an appropriate penalty for failure to license a money services business.  In this case, Virginia has chosen to make the lack of a license more easily punishable by excluding a mens rea requirement, but also chose to make the penalty less severe by making it a misdemeanor offense.  By applying § 1960(b)(1)(A) in this context, Congress is able to override this lesser penalty with further fines and imprisonment.  In the context of the state's right to choose an appropriate punishment for violations of its laws, this goes beyond "bolstering" and impinges on the state's police power.

**V.    FORFEITURE IN THIS CASE WOULD VIOLATE THE EXCESSIVE FINES CLAUSE OF THE EIGHTH AMENDMENT**

Given the punitive nature of the aforementioned statutes, even if the funds seized by the Government could be proven forfeitable, applying this forfeiture to the Claimant's interested funds is improper because the rationale for forfeiting the Claimant's interested share in the defendant currency would be a violation of the Excessive Fines Clause of the Eighth Amendment.  In United States v. Bajakajian, the court held in an *in personam* forfeiture (while acknowledging that the same rule applies to *in rem* forfeitures when they are effectively punitive), that the district court may consider whether a forfeiture was an excessive fine under the Eighth Amendment of the Constitution. 524 U.S. 321, 331-32  (1998).  Furthermore, the Supreme Court has found certain civil forfeitures to be punitive in nature.  In Austin v. United States, the Court held that the provision of an innocent owner defense in the statute served to focus on a determination of culpability in a way that made the forfeiture look more like punishment. 509 U.S. 602, 619 (1993); see also Bajakajian, 524 U.S. at 331, n.6.

In the instant case, Congress approved the innocent owner defense (originally proffered by the U.S. Department of Justice – 18 U.S.C. § 983(d)) due to its concern for preventing "forfeiture of property used in criminal activity in cases where the owner did not know of the conduct or attempted to terminate the illegal use." 2000 Congressional Information Service P.L. 106185 (summarizing the legislative history of Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202 (2000)). Thus, when the presence of the Innocent Owner Defense in § 983(d) is coupled with the fact that the Government's Complaint has shown no more than possible inadvertence on the part of Mr. Flores, the Excessive Fines Clause is clearly violated if and when the funds were found to be forfeitable.

**VI.**    **APPLICATION OF THE CITED CIVIL FORFEITURE STATUTES TO THE CLAIMANT'S INTERESTED FUNDS WITHOUT PROOF OF OTHER ILLEGAL ACTS IS INHERENTLY UNFAIR**

"I do not see a civil purpose in the present forfeiture; I am not persuaded that money that may have been lawfully acquired and may be lawfully possessed becomes an 'instrumentality of crime' simply because its possession is not reported."  United States v. $145,139.00, 18 F.3d 73, 76 (2d Cir. 1994) (Kearse, J., dissenting).  Judge Kearse's dissent is also supported by the legislative history of the civil forfeiture statutes, as interpreted by Chief Justice Marshall, which suggests that the rationale for a quasi-taking of one's property under the civil forfeiture statutes was *not* to punish one who *unknowingly* ran an unlicensed money transmitting business. See Calero-Toledo v. Pearson Yacht Leasing Co., 46 U.S. 663, 692 (1974) (quoting Chief Justice Marshall in Peisch v. Ware, 4 Cranch 347, 365 (1808) ("The law is not understood to forfeit the property of owners or consignees, on account of the misconduct of mere strangers, over whom such owners or consignees could have no control")  Furthermore, Congress' provision of an innocent owner defense indicates Congress' concern that forfeiture statutes may be used in inappropriate circumstances.  Allowing the Government to establish the propriety of a civil forfeiture without any requirement of proof of intent to commit some more serious crime, or at least intent to violate the reporting statute, undermines the goal of protecting the innocent and places the burden of production *and* persuasion on those with the least resources, even while the Government retains the Claimant's resources.  This arbitrary punishment of unwitting violators who often lack the resources to recover seized funds does not seem like a result Congress could have intended.

VII.    **CONCLUSION**

For good cause shown in this memorandum, the Court should grant this motion to dismiss due to the failure of the Government's Complaint to demonstrate that the defendant property was subject to forfeiture.


                                        Respectfully Submitted,

                                        **MARTIN McMAHON & ASSOCIATES**


                                        BY    _____/s/_____
                                              Martin F. McMahon, #196642
                                              Lisa D. Angelo, #491206
                                              1150 Connecticut Ave. N.W., Suite 900
                                              Washington, DC 20036
                                              (202) 862-4343
                                              (202) 828-4130 (fax)

                                              *Attorneys for Defendant Montoya*


                        **CERTIFICATE OF SERVICE**

I HEREBY certify that on this 28th day of September, 2006, a copy of the foregoing was sent via electronic mail to Judith Kidwell, Esq., U.S. Attorney's Office, Asset Forfeiture Unit, Criminal Division, 555 Fourth St., N.W., Room 4822, Washington, DC 20530.


                                        _____/s/_____
                                        Martin F. McMahon, Esq.