## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.  05-01364 (RBW)** |
| ) | |
| **SEVENTY-NINE THOUSAND THREE** ) | |
| **HUNDRED TWENTY-ONE DOLLARS** ) | |
| **($79,321.00) IN UNITED STATES** ) | |
| **CURRENCY,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## GOVERNMENT'S OPPOSITION TO MOTION TO DISMISS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this Opposition to Claimant's Motion To Dismiss the Government's Complaint.  As discussed below, Claimant's arguments are either baseless or premature, and his motion should be denied.  Moreover, Claimant should be required to answer the Government's Verified Complaint.

## Background

On July 8, 2005, the United States filed its Verified Complaint for Forfeiture, *In Rem*.  As recited in the Verified Complaint herein, the United States brought this civil action to forfeit $79,321.00 that a courier, Santos Efrain Flores (hereafter "Mr. Flores") had concealed and attempted to smuggle out of the United States on March 21, 2005, without declaring the monies. Having received no verified claims or answers, on November 21, 2005, the Government filed an affidavit and entry for default.  The Clerk of the Court entered the default on November 22, 2005. On December 20, 2005, the Government filed its Motion for Default Judgment and a Decree of

Forfeiture was entered on December 21, 2005.

On January 12, 2006, Claimant filed a motion to vacate judgment.  On May 22, 2006, the Court denied his motion, without prejudice, for failing to establish that he was entitled to relief under Fed. R. Civ. P. 60(b).  However, the Court gave Claimant leave to file a renewed motion. On June 6, 2006, Claimant filed a Renewed Rule 60(b) Motion to Vacate Judgment By Default, and the Court subsequently granted Claimant's motion and vacated the default judgment.

Now, more than one year after the Complaint was filed and notice given to all interested parties, Claimant still refuses to answer the Government's allegations.  Instead, as yet another delay tactic, he has filed a baseless motion to dismiss the Government's Complaint, alleging that: (1) the Government's Complaint fails to satisfy Rule E(2) of the Supplementary Rules; (2) application of 18 U.S.C. § 1960(b)(1)(A) is unconstitutional and violates the principles of federalism; (3) forfeiture in this case would violate the excessive fines clause; and finally, (4) this forfeiture action is, somehow, unfair to him and unintended by Congress.

## DISCUSSION

### I.  The Government's Forfeiture Complaint Satisfies Rule E(2)(a)

Claimant has asserted that the Government's forfeiture Complaint fails to meet the "heightened pleading" requirement of Supplementary Rule E(2), because the Complaint fails to: (1) "state that either Mr. Flores or claimant knowingly and/or intentionally violated the statutes on which forfeiture was based;" (2) allege specific facts which support an inference of the requisite intent to evade under 18 U.S.C. §§ 5316, 5317, 5324, and 5332;[1] and/or (3) state the

---

[1] The Government alleged, with particularity, violations of 31 U.S.C. §§ 5316, 5317, 5324, and 5332, not Title 18.  Perhaps if Claimant reviews the proper statutes, his arguments will become moot on this point.

2

requisite knowledge element of 18 U.S.C. § 1960.  Claimant's arguments display a fundamental

misunderstanding of the requirements of a forfeiture complaint.  In support of his misguided

arguments, Claimant has cited to cases decided before the enactment of the Civil Asset Forfeiture

Reform Act (CAFRA) of 2000,  Pub. L. No. 106-185, 114 Stat. 202 (2000), which took effect

August 23, 2000,[2] and which substantially revised civil forfeiture law in the United States.

A complaint is sufficient to survive a motion to dismiss if it satisfies Rule E(2)(a) by

stating a reasonable basis to believe that the property is subject to forfeiture.  *See United States v.*

*$49,000 in U.S. Currency*, 330 F.3d 371, 376 n.8 (5th Cir. 2003); *United States v. Mondragon,*

313 F.3d 862 (4th Cir. 2002); *United States v. Funds in the Amount of $40,000*, 2004 WL

2191576 (N.D. Ill. 2004).  A complaint only has to state the basis for the Government's case; it is

not required to disprove any possible defenses to forfeiture. *United States v. 630 Ardmore Drive*,

178 F. Supp. 2d 572 (M.D.N.C. 2001) (holding that CAFRA relaxed forfeiture pleading

requirement; Government can withstand motion to dismiss even if facts alleged in complaint are

not sufficient for Government to succeed at trial).

Forfeitability is determined at the time of trial and "no complaint may be dismissed on the

ground that the Government did not have adequate evidence at the time the complaint was filed

to establish the forfeitability of the property."  *See* 18 U.S.C. § 983(a)(1)(D).  In fact, "the

Government may use evidence gathered after the filing of a complaint for forfeiture to establish,

by a preponderance of the evidence, that property is subject to forfeiture.  *See* 18 U.S.C.

§ 983(c)(2).

---

[2] In fact, we are at a loss to understand how claimant made this error in light of the fact
that the court in *United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 148 (3d Cir.
2003), points out in a footnote that the claim was filed pre-CAFRA.

3

The Government's Verified Complaint sets forth the legal grounds supporting forfeiture and provides, in detail, the circumstances surrounding the seizure of the defendant currency, including the date, location, name of the courier, and admissions made by Mr. Flores to Government officials. The Complaint more than adequately advises Claimant of the Government's allegations and plainly shows that the Government has a legitimate legal basis for holding the property.

More importantly, the Complaint clearly enables the Claimant to begin an investigation and to frame a responsive pleading, as evidenced by his numerous pleadings and affidavits filed with this Court to set aside the default judgment. For him to assert now that he cannot figure out what the Complaint has alleged is disingenuous.

## II. The Courts Have Upheld The Constitutionality of 18 U.S.C. § 1960

Claimant alleges that 18 U.S.C. §§ 1960(b)(1)(A) should not be applied to the defendant currency because the statute violates the Equal Protection Clause of the Fifth Amendment and the traditional principles of federalism. He argues § 1960(b)(1)(A) violates the Equal Protection Clause of the Fifth Amendment to the Constitution of the United States "because it arbitrarily imposes double federal liability on certain citizens without a rational basis for such a distinction." Claimant also contends that states should be allowed to choose an appropriate punishment for violations of its laws, and that Section 1960 "impinges on the state's police power."

In support of his equal protection argument, Claimant has taken the unusual approach of citing *United States v. Barre*, 324 F. Supp.2d 1173 (D. Colo. 2004) (holding that 18 U.S.C. § 1960 does not violate equal protection and is not unconstitutionally vague), and asking this

Court "to reconsider" the Colorado Court's decision.[3]  The Government is unaware of any authority that this Court has to reconsider the Colorado district court's 2004 decision.  Moreover, although not cited by Claimant, other courts have rejected constitutional arguments with respect to Section 1960, under both equal protection and due process analyses.

In *United States v. Gavidel*, No. 01 CR. 0417 TPG, 2002 WL 1203845 (S.D.N.Y. 2002) and *United States v. Elfgeeh*, CR-3-0133 (CPS) 2004 WL 3767299 (E.D.N.Y. 2004), the district courts rejected defense arguments that Section 1960(b)(1)(A) violated equal protection.  In *Gavidel*, the defendant argued that Section 1960 violated the Equal Protection clause of the Fourteenth Amendment because the statute results in disparate treatment dependent upon a defendant's state of residence.  In refusing to dismiss the defendant's indictment, the Court held that "a federal statute such as this, incorporating state law, is constitutional despite non-uniformity of the state laws."  *United States v. Gavidel,* at 1203845 (citing *United States v. Sharpnack*, 355 U.S. 286 (1958) (upholding the conformity for federal enclaves and the criminal law of the states within which they sit).

In *Elfgeeh*, the defendant argued that Section 1960 violated the equal protection component of the Due Process Clause of the Fifth Amendment to the Constitution because it criminalizes the unlicensed operation of money transmitting businesses only in states where such operation is a crime under state law.  In rejecting the defendant's argument, the Court noted that the *Sharpnack* decision was cited as authority, in 1984, in upholding federal procedures that were found not to violate the due process clause of the Fifth Amendment "merely because they are

---

[3] Initially, the district court in *Barre* had agreed with the defendant and dismissed an indictment.  However, upon reconsideration, the court reversed itself, finding that the statute was constitutional.

applicable only to persons charged in the District of Columbia." (citing *U.S. v. Cohen*, 733 F.2d 254 (D.C. Cir. 1984)).

More recently, in *United States v. Talebnejad*, 460 F.3d 563 (4th Cir.), the Fourth Circuit upheld the constitutionality of 18 U.S.C. § 1960. The Court of Appeals rejected the defendants' arguments that Section 1960: (1) violated the Equal Protection Clause because not all states require money transmitting businesses to be licensed; (2) violated the Due Process Clause because it lacked a scienter requirement as to the applicability of state licensing laws; or (3) was unconstitutionally vague. As that court noted: "The definition of federal criminal offenses lies within the province of Congress." *United States v. Talebnejad*, at 568 (citing *Liparota v. United States*, 471 U.S. 419, 424 (1985)).

### III.  Claimant's Excessive Fines Arguments Are Premature

Citing *United States v. Bajakajian*, 524 U.S. 321 (1998), Claimant argues that, even if the defendant currency is forfeitable, forfeiture in this case would violate the excessive fines clause of the Eighth Amendment to the United States Constitution.[4] Claimant also alleges that the innocent owner provision in 18 U.S.C. § 983(d) somehow supports his argument, in light of what he claims was "no more than possible inadvertence" by Mr. Flores.

Claimant's arguments are premature. He has the burden on both of these issues, and he will have to answer the Government's Complaint and submit to discovery before these issues become ripe.

A person contesting the forfeiture of property has the initial burden of showing that the

---

[4] Presumably, Claimant is making this argument only with respect to the funds he alleges he was transmitting.

forfeiture of the property in its entirety would be grossly disproportional to the gravity of the offense. *See United States v. Ahmad*, 213 F.3d 805 (4th Cir. 2000) (the party challenging the constitutionality of the forfeiture has the burden of demonstrating excessiveness); *United States v. Premises Known as 6040 Wentworth Avenue*, 123 F.3d 685 (8th Cir. 1997) (Eighth Amendment analysis is the same for civil and criminal cases; defendant has burden of making initial showing of gross disproportionality); 18 U.S.C. § 983(g)(3) (codifying analysis and burden for civil forfeiture purposes). Title 18, United States Code, Section 983(g)(3) provides that:

> The claimant shall have the burden of establishing that the forfeiture is grossly disproportional by a preponderance of the evidence at a hearing conducted by the court without a jury.

As to Claimant's innocence, the Government continues to submit that Claimant is not an innocent owner. As a threshold matter, there is no constitutional "innocent owner defense" or other exemption from the effects of forfeiture based upon a party's innocent state of mind. *Bennis v. Michigan*, 516 U.S. 442 (1996) (rejecting claimant's argument that her interest should not be forfeited because she did not know her property would be used to violate the law). "To the extent that such forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 687-88 (1974) (upholding a Puerto Rican civil forfeiture statute). Unless a statute expressly provides a defense or exemption to forfeiture for third-party interests, there is no such defense or exemption.

In this action, this is a statutory innocent owner defense. Once the Government establishes forfeitability, the burden shifts to a claimant to establish an innocent owner defense

7

by a preponderance of the evidence. *See* 18 U.S.C. § 983(d)(1). Although Claimant alleges that he is an owner for purposes of the innocent owner provision in 18 U.S.C.§ 983(d), other than Claimant's assertions, the Government has no evidence that Claimant has any right to challenge the forfeiture of the defendant funds. Even if what Claimant alleges is true, he cannot meet the statutory definition of an "innocent owner," because according to Claimant, he gave monies to a courier and is therefore, a bailor, not a bailee. Likewise, the courier, who was in possession of the defendant funds, would be precluded from asserting this defense, because section § 983(d)(6) provides that "owner" does not include a bailee unless the bailor is identified and the bailee shows a colorable legitimate interest in the property seized. In any case, discovery from Claimant should convert current allegations to sworn facts.

## IV. Congress' Enactment of Statutes Demonstrates Its Intent

Finally, Claimant asserts that he is innocent and, therefore, the forfeiture of the defendant currency is unfair to him. In support of his argument, Claimant asserts that Congress could not have intended to forfeit currency being smuggled or property involved in an unlicensed or unregistered money transmitting business.

Section 5332 of Title 31 of the United States Code, also referred to as the "bulk cash smuggling" statute, was enacted in October 2001 as part of the USA Patriot Act, Pub. L. 107-56, Tit III § 371, 115 Stat. 272, 336-38 (2001). This statute criminalizes the unreported transport of large quantities of currency rather than merely the failure to report such transport. Imposition of civil forfeiture under this section is predicated on the commission of the crime of currency smuggling.

Recognizing that smuggling a large quantity of cash is "one of the most reliable warning

signs of drug trafficking, terrorism, money laundering, racketeering, tax evasion and similar

crimes," Congress stated that the purposes of Section 5332 are to: (1) make the act of smuggling

bulk cash itself a criminal offense; (2) authorize forfeiture of any cash or instruments of the

smuggling offense; and (3) emphasize the seriousness of the act of bulk cash smuggling.

H.R. 3162, 107th Cong., § 371(a)(3) and (b) (2001). A Congressional finding in regard to the

enactment of this statute reads:

> The current penalties for violations of the currency reporting requirements are
> insufficient to provide a deterrent to the laundering of criminal proceeds. In
> particular, in cases where the only criminal violation under current law is a
> reporting offense, the law does not adequately provide for the confiscation of
> smuggled currency. In contrast, if the smuggling of bulk cash were itself an
> offense, the cash could be confiscated as the *corpus delicti* of the smuggling
> offense.

H.R. 3162, § 371(a)(6).

The Government is not required to prove "that the person who allegedly failed to comply

with the reporting requirement of § 5316(a) either had actual knowledge or intended 'willfully'

to violate that requirement." *United States v. $145,139.00*, 18 F.3d 73 (2d Cir. 1994), *cert.

denied sub nom*. In this case, Mr. Flores was in possession of the defendant currency, and he

admitted that he knew he was smuggling currency because he did not comply with the reporting

requirement. The Government, therefore, can prove by a preponderance of the evidence that a

violation occurred and that the defendant currency is subject to forfeiture, regardless of whether

Mr. Flores was acting on his own behalf, or, as Claimant apparently alleges for at least part of the

funds, as Claimant's agent. The Government's Complaint establishes a prima facie case for

forfeiture under the bulk cash smuggling statute, and Claimant's "intent" under that statute is

irrelevant.

Section 1960 of Title 18, United States Code was enacted in 1992 and makes it a federal crime to conduct a money transmitting business without a State license in any State where a license was required.[5] *See United States v. Velastegui*, 199 F.3d 590 (2d Cir. 1999) (because state law prohibits agents of money transmitters from transmitting money directly, defendant violated Section 1960 when he transmitted money directly to Mexico instead of forwarding it to the licensed principal). In 1994, Congress enacted 31 U.S.C. § 5330, requiring all money transmitting businesses – including those already licensed by the States – to register with the Secretary of the Treasury. Section 1960 was amended to include as an offense operating without having complied with 31 U.S.C. § 5330 and the Treasury regulations.[6] License or registration aside, the statute also criminalizes transportation or transmission of criminal proceeds.

In 2001, Congress again amended the statute to address serious concerns regarding money service businesses that operate outside of the traditional business or financial structures.[7] The Government is not required to prove that an unlicensed money transmitter operating without a State license knew that a license was required or that he knew that operating without a license was a crime. A money transmitter can be prosecuted under 18 U.S.C. § 1960 when he or she: (1) operates without a State license; (2) operates in violation of the Treasury regulations requiring all money service businesses to register with FinCEN; or (3) transfers money knowing that the

---

[5] According to Claimant, he operates in Virginia, which requires a state license for money transmitting businesses. In fact, Virginia requires the submission of an extensive application, including disclosure forms and surety bonds, in order to obtain such a license.

[6] The federal registration requirements became effective in December 2001.

[7] The amendment became effective October 26, 2001. The revised implementing regulations under 31 U.S.C. § 5330 were effective on December 31, 2001. *See* 31 C.F.R. § 103.41.

funds being transmitted are derived from a criminal offense, or are intended to be used for an unlawful purpose.

Under 31 U.S.C. § 5330, any person who owns or controls a money transmitting business must register the business (whether or not the business is licensed as a money transmitting business in any state) with the Secretary of the Treasury, no later than the end of the 180-day period beginning on the date on which the business is established. The penalty for failure to comply with this section is $5,000 for each violation. Each day the violation continues constitutes a separate violation.

Finally, with these amendments, Congress provided authority for civil forfeiture under 18 U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. § 1960. Thus, if the defendant currency was, in fact, involved in Claimant's business *as he alleges*, Claimant's conduct in operating an unlicensed money transmitting business provides an additional basis for the forfeiture of the defendant currency.

In *Talebnejad*, the Court recognized that, while many of the money transmitting businesses might be operated informally by immigrants for fellow immigrants, Congress enacted Section 1960 to "combat the growing use of money transmitting businesses to transfer large amounts of the monetary proceeds of unlawful enterprises." *United States v. Talebnejad*, at 565 (citing *United States v. Velastegui*, 199 F.3d 590, 593 (2d Cir. 1999)). In holding that an offense under Section 1960 is a general intent crime, the Court noted that Congress amended Section 1960 in October 2001 to eliminate a potentially available affirmative defense that the defendant was unaware of applicable state licensing requirements. *See United States v. Talebnejad*, at 565 (citing H.R. Rep. No. 107-250, pt. I at 54 (2001). Thus, Claimant's still unproven state of mind

11

is irrelevant here.

## **Conclusion**

For these reasons, it is respectfully requested that Claimant's motion be denied, and that

Claimant be required to answer the Government's Verified Complaint.

Respectfully submitted,

_/s/_____
JEFFREY A. TAYLOR
United States Attorney
D.C. Bar No. 498610

_/s/_____
WILLIAM R. COWDEN
Assistant United States Attorney
D.C. Bar No. 426301

_/s/_____
JUDITH A. KIDWELL
Assistant United States Attorney
555 4th St., N.W. Room 4818
Washington, D.C.  20530
(202) 514-7250

## **CERTIFICATE OF SERVICE**

I, hereby, certify that copies of the foregoing Opposition to Motion to Dismiss the Government's Complaint were served by electronic filing upon Martin F. McMahon, Esq. and Lisa D. Angelo, Esq., Martin McMahon & Associates, as counsel for Mr. Alberto Montoya, 1150 Connecticut Avenue, N.W. Washington, D.C.  20036, on this 16th day of October, 2006.


_/s._____
JUDITH A. KIDWELL
Assistant United States Attorney

.